# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| MICHELE SIMMONS, MARY SCHLENK, CAROL STOCKTON, JANET THOMPSON, PAMELA WILLIAMS, WANDA WILSON, JESSICA POTTER, ANGELE FRANKLIN, RICKEY DEVARGAS, MARYBETH BROWN, NORMA DEAN, VICKI FREEMAN, CARLA HALL, KELLI WINEGARNER, DEBBIE BOARDMAN, ROXANNE MCMURTREY, KARLIE GERAGHTY, DEBORAH MCGINNIS, SUSAN SHUSTER, FRANCES WIERNUSZ, LISA BOWERSOX, JAY NOVELL, TRACY UKADIKE, GREGORY ISAACS, LACIE STEWART, DENNIS KRAUSE, GINA BEU, LORI CHASE, HANNA HAREZLAK, MARY ANN MILLER, BRANDON SCOTT, DAVID THOMPSON, DEBORAH VOLKERT, CAROL WADDELL, HILLARY WALLS-STEWART, BERTHETTA ROBINSON, LONNA ROMERO, CHARITY AUDET, MADELYNN BARTON, LAUREN COLVILLE, CARY DAVIS, LISA FAULKNER-JONES, NANCY GUNKEL, MIMMY POLAN, LABORE SESSIONS, JERYL SEWARD, CHERYL SMITH, MICHAEL STEVENS, DEBBIE WIENER, MELIA WILSON, JOHN KREGER, SANDRA AMUNDSON, MAUREEN BARBRICK, KATHLEEN FLETCHER, DEBI GRANT, CATHRYN HOUSEY, VENORIS BUMPUS, KAREN KENNEDY-EVANS, PRISCILLA MOORE, ROBIN PYRLIK, KAREN STRUB, GWEN RYAN, VICKI INGBER, DARLENE BROWN, AND HAZEL DOHERTY, | Cause No.: 4:15-CV-340 |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| vs. | |
| SKECHERS U.S.A., INC., SKECHERS U.S.A., INC. II and SKECHERS FITNESS GROUP, | |
| Defendants. | |

## NOTICE OF REMOVAL

COME NOW Defendants Skechers U.S.A., Inc., Skechers U.S.A., Inc. II, and Skechers Fitness Group (collectively, "Skechers"), by and through the undersigned counsel, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and file this Notice of Removal of the above lawsuit, originally filed in the Circuit Court of the City of St. Louis, State of Missouri, and in support of their Notice of Removal, state as follows:

### PRELIMINARY STATEMENT

1. This is a civil action over which this Court has original jurisdiction, pursuant to 28 U.S.C. § 1332, and is one which may be removed to this Court pursuant to 28 U.S.C. § 1441 because there is complete diversity among all proper parties to this action and the amount in controversy exceeds $75,000, exclusive of interests and costs.

2. On or about January 6, 2015, 65 plaintiffs from 15 different states (the "Plaintiffs") filed a Petition in the Circuit Court of the City of St. Louis, State of Missouri alleging claims for: (1) strict products liability due to defective manufacturing; (2) strict products liability due to design defect; (3) strict products liability defect due to inadequate warning; (4) strict products liability due to non-conformance with representations; (5) negligence; (6) breach of express warranty; (7) breach of implied warranty; (8) negligent representation and fraud; (9) unjust enrichment; (10) violation of unfair and deceptive trade practices acts; and (11) punitive damages. All of Plaintiffs' claims arise from injuries allegedly sustained while wearing Skechers Shape-ups® rocker-bottom shoes ("Shape-ups"). A copy of the court file for Case No. 1522-CC00053 is attached hereto and incorporated by reference as Exhibit A. All Skechers defendants are citizens of the State of California and Delaware.

3. There are currently hundreds of other cases like those of Plaintiffs that arise from personal injury claims relating to Shape-ups. These cases are largely being managed in one of two coordinated proceedings. The Judicial Panel on Multidistrict Litigation ("JPML") has coordinated cases pending in federal courts into a multidistrict litigation assigned to United States District Judge Tomas B. Russell in the Western District of Kentucky (the "MDL"). There are presently 979 cases pending in the MDL. Other cases filed in various California state courts likewise have been coordinated and assigned to a single judge, the Honorable Elihu M. Berle in the Superior Court of California for Los Angeles County (the "California coordinated proceedings"). At present, the California coordinated proceedings encompass 66 cases filed on behalf of 863 plaintiffs.

4. Apparently, Plaintiffs have chosen not to proceed in California and have attempted to structure their Petition so as to thwart removal and coordination of their claims in the MDL. Specifically, the Plaintiffs have sought to join the claims of just six Missouri plaintiffs with those of 59 out-of-state plaintiffs (including two California plaintiffs) in a single case filed in Missouri state court. However, none of the out-of-state plaintiffs (including the two California plaintiffs) have any connection with the State of Missouri. They do not allege that they purchased their Shape-ups in Missouri or were injured while using their shoes in Missouri. They do not reside in Missouri and do not allege that any wrongdoing occurred in Missouri. Their alleged injuries also arise from distinct events unconnected to the Missouri plaintiffs. The sole apparent reason for the inclusion of claims by California plaintiffs is purportedly to destroy diversity and thereby prevent removal to federal court.

5. On or about January 6, 2015, the same attorneys responsible for filing the above-referenced cause of action also filed five nearly identical lawsuits in the Circuit Court of the City

3

of St. Louis.  Each suit contains roughly six Missouri residents, two or three California residents with no connection to Missouri, and approximately 50 residents from other states who likewise have no connection to Missouri.  The vast majority of plaintiffs in all six actions are out-of-state plaintiffs whose claims have no connection to Missouri.

6. In both this and the other five cases, a disparate collection of claims from unrelated plaintiffs from all across the country have been combined even though they have no connection to one another beyond an attribution of their wide-ranging injuries to Shape-ups.  The plaintiffs in these cases purchased different styles of Shape-ups shoes made by different factories at different times, and wore them for varying periods of time and under different conditions.  Unlike most mass tort cases, no signature injury or consistent mechanism of injury exists or has been alleged.  Instead, Plaintiffs' alleged manner and type of injuries vary dramatically—mechanisms of injury range from falls to idiopathic or chronic pain, and alleged injuries range from contusions to fractures involving the legs, hips, arms, wrists, toes, feet, ribs, and hands.  These alleged injuries occurred across the nation and over a period of multiple years.

7. Further evidencing Plaintiffs' intention to structure their lawsuit to avoid the MDL is the fact that at least one plaintiff—Pam Weaver, a citizen of Alabama—has existing complaints in both the MDL and the Missouri state court. (*See* Exhibit B).  This plaintiff (and her attorneys) are certainly aware of the MDL, and have engineered their complaints to avoid coordination.

8. Despite Plaintiffs' maneuvering, however, all of the properly joined parties to this action are completely diverse.  The California plaintiffs—and, for that matter, all of the out-of-state plaintiffs—are improper parties to this action, and any Missouri court lacks personal jurisdiction over Skechers in connection with their claims.  (*See* Skechers' concurrently filed

Motion to Dismiss Out of State Plaintiffs' Claims for Lack of Personal Jurisdiction ("Motion to Dismiss").)  Moreover, the California plaintiffs specifically are fraudulently joined in this action for the sole purpose of destroying diversity jurisdiction and their claims are included despite the fact that their joinder is not permitted by the rules of Missouri and its federal courts.

9. In light of Plaintiffs' transparent attempt to forum shop, it is appropriate to disregard the foreign plaintiffs for purposes of assessing diversity of citizenship.

## I.  SUBJECT MATTER JURISDICTION EXISTS UNDER 28 U.S.C. § 1332(A)

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because, when properly considered under controlling law, this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The Circuit Court of the City of St. Louis, State of Missouri is located within the Eastern District of Missouri Eastern Division, and venue for this action is proper in this Court under 28 U.S.C. § 1441 because the Eastern District of Missouri, Eastern Division, is the "district and division embracing the place where such action is pending."

12. Skechers was served with the Petition on January 27, 2015.  Therefore removal is timely filed.  28 U.S.C. § 1446.

13. No previous application has been made for the relief requested herein.

14. Accompanying and attached to this Notice of Removal is a Civil Cover Sheet for filing in this Court.  Also accompanying and attached to this Notice of Removal is an Original Filing Form.

15. Skechers has given written notice to Plaintiffs of the filing of this Notice of Removal and will file a copy of this Notice of Removal with the Clerk of the Circuit Court of the City of St. Louis, State of Missouri, as required by 28 U.S.C. § 1446.

### A.     The Amount in Controversy Requirement Is Satisfied.

16.     Pursuant to 28 U.S.C. §§ 1441 and 1446, removal is proper in this matter because the amount in controversy exceeds $75,000, exclusive of interests and costs.  In their Petition, Plaintiffs each pray for relief in excess of $25,000 on ten different causes of action.  Plaintiffs each also pray for over $25,000 in punitive damages, which is also considered in determining the amount in controversy.  *OnePoint Solutions, L.L.C. v. Borchert*, 486 F.3d 342, 348–50 (8th Cir. 2007) ("[T]he federal court has jurisdiction . . . unless, as a matter of law, [the plaintiff] could not recover punitive damages . . . , the amount of damages [the plaintiff] could recover is fixed below the jurisdictional amount, or no reasonable jury could award damages totaling more than $75,000 in the circumstances that the case presents." (quotation and citation omitted)).  Nowhere in the Petition do Plaintiffs limit their damages to less than $75,000.  Rather, a plain reading of the Petition confirms that Plaintiffs have ***each and independently*** requested damages in an amount in excess of $250,000, plus punitive damages in excess of $25,000.  As a result, the jurisdictional minimum for removal is satisfied.

### B.     All Properly Joined Plaintiffs Are Completely Diverse.

17.     As alleged in Plaintiffs' Petition, Skechers U.S.A., Inc., is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in California.  Therefore, for purposes of diversity jurisdiction, Skechers U.S.A., Inc. is a citizen of California and Delaware.  (Pet. ¶ 11.)

18.     As alleged in Plaintiffs' Petition, Skechers U.S.A., Inc. II, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California.  Therefore, for the purposes of diversity jurisdiction, Skechers U.S.A., Inc. II is a citizen of California and Delaware.  (Pet. ¶ 12.)

6

19. As alleged in Plaintiffs' Petition, Skechers Fitness Group is a trademarked subsidiary of Skechers U.S.A., Inc. II with its principal place of business in California. Although this entity is actually a division of Skechers U.S.A., Inc. and not a separate entity, for the purposes of diversity jurisdiction, Skechers Fitness Group is a citizen of California. (Pet. ¶ 13).

20. As alleged in Plaintiffs' Petition, all six Missouri plaintiffs—Michelle Simmons, Mary Schlenk, Carol Stockton, Janet Thompson, Pamela Williams, and Wanda Wilson—are citizens of Missouri. (Pet. ¶¶ 15-26.)

21. With respect to the remaining plaintiffs, all of whom are alleged to be citizens of states other than Missouri, such persons should not be considered for diversity purposes. As explained below and in Skechers' concurrently filed Motion to Dismiss, the out-of-state plaintiffs should be dismissed from this action because they cannot establish that a Missouri court can exercise jurisdiction over their claims. Complete diversity therefore exists between Skechers and the Missouri plaintiffs—the only plaintiffs with claims properly within the Court's jurisdiction.

22. If the out-of-state plaintiffs are not dismissed for lack of personal jurisdiction, their citizenship is properly disregarded for diversity purposes or their cases properly severed because their inclusion in this lawsuit constitutes fraudulent joinder and misjoinder.

**II. THE OUT-OF-STATE PLAINTIFFS SHOULD NOT BE CONSIDERED FOR DIVERSITY PURPOSES BECAUSE THEY CANNOT ESTABLISH PERSONAL JURISDICTION OVER THE DEFENDANTS IN MISSOURI.**

**A. The Court Has Discretion to Sequence Preliminary Jurisdictional Issues by Evaluating Personal Jurisdiction Before Assessing Diversity of Citizenship.**

23. As more fully explained in Defendants' concurrently filed Motion to Dismiss, under the Supreme Court's recent decision in *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 760–61 (2014), the out-of-state plaintiffs cannot sue Skechers in Missouri because they

7

cannot establish personal jurisdiction over Skechers in Missouri's courts. The outcome of the Court's jurisdictional analysis will be the same regardless of the Court's sequencing of issues, but Defendants urge the Court to rule on personal jurisdiction *before* evaluating diversity jurisdiction in the interest of clarity and efficiency. Where, as here, a case presents straightforward questions of personal jurisdiction, it makes sense to address those issues first. *See Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (district court has discretion on removal to resolve personal jurisdiction before subject matter jurisdiction); *Evans v. Johnson & Johnson*, CV No. 14-2800, 2014 WL 7342404, at *2-3 (S.D. Tex. Dec. 23, 2014) (holding that "the most efficient course of action [was] to consider the [defendants'] motion to dismiss for lack of personal jurisdiction" before addressing plaintiff's motion to remand). Indeed, it is well established that "[a] court faced with more than one jurisdictional issue may decide these jurisdictional questions in any order." *In re AFY*, 734 F.3d 810, 816 (8th Cir. 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998)); *see also Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("*Ruhrgas* held that there is no mandatory sequencing of jurisdictional issues." (quotation omitted)); *Lance v. Coffman*, 549 U.S. 437, 439 n.* (2007) (affirming that "there is no unyielding jurisdictional hierarchy" (quoting *Ruhrgas*, 526 U.S. at 578)); *Ruhrgas*, 526 U.S. at 585 ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

24.     Following *Ruhrgas*, three discretionary factors support addressing personal jurisdiction at the outset. First, the personal jurisdiction question presented in the Motion to Dismiss invokes the limits of the Court's authority, as it arises from the due process protections of the Constitution. In contrast, the potential issue of subject matter jurisdiction in this case—a lack of complete diversity—is merely statutory. *See id*. at 584 ("[T]he impediment to subject-

matter jurisdiction on which [plaintiff] relies . . . rests on statutory interpretation, not constitutional command. . . . In contrast, [personal jurisdiction] relies on the constitutional safeguard of due process to stop the court from proceeding to the merits of the case.").

25. Second, "judicial economy and restraint" support addressing personal jurisdiction issues first because the case presents a "straightforward personal jurisdiction issue." *Id.* at 586, 588 ("[T]he district court may find that concerns of judicial economy and restraint are overriding."). The question of personal jurisdiction is controlled by *Daimler* and subsequent case law, which compels dismissal of the out-of-state plaintiffs' claims. The subject matter jurisdiction question, by contrast, presents a more complex inquiry because it is grounded in the doctrines of fraudulent joinder, fraudulent misjoinder, and the sham joinder of California plaintiffs.

26. Finally, the Court should address personal jurisdiction first in order to provide clarity for the litigants and certainty in this litigation. *See*, *e.g.*, *Gilmor v. Preferred Credit Corp.*, CV No. 10-0189-W-ODS, 2011 WL 111238, at *1 n.1 (W.D. Mo. Jan. 13, 2011) ("While jurisdictional issues must be addressed first, it is permissible to address personal jurisdiction before addressing subject matter jurisdiction . . . in the interest of clarity.") (citation omitted).

### B. The Out-of-State Plaintiffs Cannot Establish Personal Jurisdiction Over Defendants in Missouri.

27. As explained more fully in Skechers' Motion to Dismiss, because the out-of-state plaintiffs cannot establish personal jurisdiction over Skechers in Missouri, the Court lacks authority to exercise specific jurisdiction over their claims. The Court does not have general jurisdiction over Defendants because Plaintiffs do not allege that Skechers is incorporated in or has a principal place of business is in Missouri. *See Daimler*, 134 S. Ct. at 760–61.

28. The Court also lacks specific jurisdiction over Defendants with regard to the out-of-state plaintiffs because those plaintiffs do not allege an injury or any contact with Defendants in Missouri. That specific jurisdiction may exist for a Missouri resident's claim will not create jurisdiction for the out-of-state plaintiffs' claims. Nor can a plaintiff create personal jurisdiction by "piggybacking" on another plaintiff's proper invocation of personal jurisdiction in the forum state. *See*, *e.g.*, *Level 3 Commc'ns, L.L.C. v. Ill. Bell Tel. Co.*, CV No. 13-1080, 2014 WL 50856, at *2 (E.D. Mo. Jan. 7, 2014) ("Pendent personal jurisdiction does not stand for the proposition that a second plaintiff can essentially 'piggyback' onto the first plaintiff's properly established personal jurisdiction."), *vacated in part on other grounds*, 2014 WL 1347531 (E.D. Mo. Apr. 4, 2014); *Turi v. Main St. Adoption Servs., L.L.P.*, CV No. 08-14511, 2009 WL 2923248, at *13 (E.D. Mich. Sept. 9, 2009) ("[W]here there are multiple plaintiffs and multiple claims, '[t]he personal jurisdiction analysis . . . must be plaintiff-specific.'") (quoting *Arnold v. Goldstar Fin. Sys., Inc.*, CV No. 01-7694, 2002 WL 1941546, at *3 (N.D. Ill. Aug. 22, 2002)); *Evans*, 2014 WL 7342404, at *6 (conducting plaintiff-specific personal jurisdiction analysis and dismissing claims of 95 plaintiffs).

29. Here, the out-of-state plaintiffs have pled that they are citizens of other states, that they purchased their Skechers in other states, and that they were injured in other states. In other words, the out-of-state plaintiffs have alleged no contact with Defendants in the State of Missouri. The Court therefore lacks personal jurisdiction over Defendants with respect to the out-of-state plaintiffs' claims. Thus, complete diversity exists with respect to the claims over which the Court has proper authority, and recognition of this fact will allow the case to be transferred to the MDL where it belongs.

### III. ALTERNATIVELY, COMPLETE DIVERSITY EXISTS BECAUSE THE OUT-OF-STATE PLAINTIFFS ARE FRAUDULENTLY JOINED AND FRAUDULENTLY MISJOINED.

30.     The Court also has subject matter jurisdiction over this case because there exists complete diversity as required by 28 U.S.C. § 1332 among all properly joined plaintiffs. The out-of-state plaintiffs' citizenship is properly ignored in the assessment of diversity because they are both fraudulently joined and fraudulently misjoined. In particular, the California plaintiffs were joined for the sole purpose of attempting to deprive Skechers of its right to removal to the federal courts. Plaintiffs' scheme to evade federal jurisdiction does not withstand scrutiny under either doctrine, both of which are intended to combat the very type of forum shopping Plaintiffs have brazenly undertaken in their Petition.

### A. The Out-of-State Plaintiffs Are Fraudulently Joined Because They Have No Basis for Recovery Under Missouri Law and Cannot Establish Personal Jurisdiction Over Defendants in Missouri.

31.     "The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 893 (8th Cir. 2014) (quoting *Murphy v. Aurora Loan Servs., L.L.C.*, 699 F.3d 1027, 1031 (8th Cir. 2012)). A party is fraudulently joined if there is "no reasonable basis in fact and law" for its inclusion. *Id.* (quoting *Murphy*, 699 F.3d at 1031).

32.     While commonly applied with respect to a fraudulently joined defendant, the Eastern District of Missouri also applies the doctrine to disregard the citizenship of plaintiffs where their claims have no basis in fact or law. *See Witherspoon v. Bayer HealthCare Pharm. Inc.*, CV No. 13-1912, 2013 WL 6069009, at *2-3 (E.D. Mo. Nov. 18, 2013) (fraudulent joinder of plaintiffs occurs when there is no "reasonable basis for predicting that the state law might impose liability based upon the facts involved" (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d

11

806, 811 (8th Cir. 2003))).  Other district courts are in accord.  *See*, *e.g.*, *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 902 (N.D. Iowa 2000) ("[T]here is a 'fraudulent joinder' caveat to the principle that a non-diverse plaintiff defeats federal diversity jurisdiction, because . . . [i]f the 'nondiverse' plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction.") (quotation omitted); *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1014 (E.D. Wis. 1999) ("The removing party must show that, after resolving all issues of fact and law in favor of the plaintiffs, the nondiverse plaintiffs cannot establish a cause of action against the defendant.") (citation omitted); *Oliva v. Chrysler Corp.*, 978 F. Supp. 685, 689 (S.D. Tex. 1997) ("The citizenship of a party-plaintiff may also be disregarded for purposes of determining whether diversity jurisdiction exists if the removing party can show that the nondiverse plaintiff was fraudulently joined.") (citations omitted).  The Eighth Circuit has also indicated that a court may inquire whether a plaintiff is a proper party to an action in the context of determining whether diversity exists.  *See Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 403-04 (8th Cir. 1977) (holding that if a plaintiff is not a "real party in interest" and is "purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction") (citations omitted).

33. Fraudulent joinder may be found on both the substantive and procedural impossibility of the plaintiff's claims against a defendant.  *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 948-51 (8th Cir. 2011) (finding fraudulent joinder of automobile seller where a Minnesota law called for dismissal of strict liability claims against non-manufacturers); *Witherspoon*, 2013 WL 6069009 (holding that a plaintiff was fraudulently joined where plaintiff's claims were barred by the statute of limitations).

34. In *Witherspoon*, the Eastern District of Missouri found that a plaintiff was fraudulently joined where the plaintiff's claims were barred by the statute of limitations. 2013 WL 6069009. *Witherspoon* involved a lawsuit filed by 92 plaintiffs in Missouri state court against a defendant with its principal place of business in New Jersey. *Id.* at *1. 91 of the plaintiffs were diverse from the defendant, but the last plaintiff was a citizen of New Jersey. *Id.* The court found that she was fraudulently joined because her claims were barred by the statute of limitations, and therefore her claims had no reasonable basis under Missouri law. *Id.* at *4-5. Because the plaintiff was fraudulently joined, the court ignored her citizenship for purposes of diversity jurisdiction and denied the plaintiffs' motion to remand. *Id.* at *5.

35. The Court here similarly should ignore the citizenship of the California plaintiffs for purposes of evaluating diversity jurisdiction because their claims have no reasonable basis under Missouri law in that the California plaintiffs cannot establish that a Missouri court has personal jurisdiction over Defendants to adjudicate their claims. Like in *Witherspoon*, only a tiny percentage of the plaintiffs in this case are nondiverse citizens. Like in *Witherspoon*, the out-of-state plaintiffs are fraudulently joined because they are precluded from pursuing their claims in Missouri state court. Pursuant to Missouri and federal law, a Missouri court must have personal jurisdiction over a defendant in order to adjudicate any claims against it. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252–53 (Mo. 2009) (en banc). A court can exercise personal jurisdiction over a defendant only to the extent permitted by the due process clause of the federal constitution. *Id.* at 253.

36. As discussed more fully above and in Defendants' Motion to Dismiss, the out-of-state plaintiffs cannot establish specific jurisdiction in Missouri because none allege that he or she purchased shoes in Missouri, was injured in Missouri, or had any other contacts with

13

Skechers in Missouri.  *See Myers v. Casino Queen, Inc.*, 689 F.3d 904 (8th Cir. 2012) (holding that for specific jurisdiction to exist, the defendant must direct its activities at residents of the forum state and the litigation must arise out of or relate to those activities within the forum state). Accordingly, the out-of-state plaintiffs are fraudulently joined because there is no reasonable basis for their claims under Missouri law.  Their citizenship is therefore properly disregarded for purposes of evaluating diversity and determining subject matter jurisdiction.

### B. Alternatively, the Citizenship of the Out-of-State Plaintiffs Is Properly Ignored for Determining Subject Matter Jurisdiction Due to Fraudulent Misjoinder.

37.     Like fraudulent joinder, fraudulent misjoinder permits a federal court to exercise diversity jurisdiction over facially non-diverse parties.  "Fraudulent misjoinder occurs when a claim involving nondiverse parties has no reasonable procedural basis, because the misjoined claim has 'no real connection with the controversy involving the claims that would qualify for diversity jurisdiction.'"  *Witherspoon*, 2013 WL 6069009, at *2 (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)).  The doctrine of fraudulent misjoinder was first recognized by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

38.     The Eighth Circuit has yet to opine on the applicability of fraudulent misjoinder in this Circuit, but other circuits and district courts within the Eighth Circuit recognize its viability in cases, such as this, where parties appear to have been joined solely to destroy federal jurisdiction even though they lack a connection to the claims of proper parties.  *See Prempro*, 591 F.3d at 622 ("The Eighth Circuit Court of Appeals has not yet considered the fraudulent misjoinder doctrine.") (citation omitted); *see also Witherspoon*, 2013 WL 6069009, at *2 (discussing fraudulent misjoinder); *In re Propecia (Finasteride) Prod. Liab. Litig.*, CV Nos. 12-

14

MD-2331 & 12-CV-2049, 2013 WL 3729570, at *4-11 (E.D.N.Y. May 17, 2013) (adopting the doctrine and engaging in a detailed discussion of its use); *In re Fosomax (Alendronate Sodium) Prods. Liab. Litig.*, MDL No. 2234, 2012 WL 1118780 (D.N.J. Apr. 3, 2012) (applying fraudulent misjoinder doctrine to sever nondiverse plaintiffs and deny a motion to remand). Additionally, the Eighth Circuit has suggested that procedural misjoinder occurs when the misjoined claims have "no real connection" to the other claims and where they are "egregiously misjoined," *i.e.* the plaintiffs specifically joined their claims in an apparent effort to avoid diversity jurisdiction. *Prempro*, 591 F.3d at 623 (citing *Tapscott*, 77 F.3d at 1371).

39. The doctrine of fraudulent misjoinder is applicable in the instant case, where 59 out-of-state plaintiffs, including two California plaintiffs, have been joined with only six Missouri plaintiffs in a suit filed in Missouri state court. Each plaintiff's claim involves a distinct injury, suffered in a distinct way, that has no relation to any other plaintiff's injury. There is no "real connection" between each of these plaintiffs or their alleged injuries. Moreover, the permissive joinder rules of Missouri or Federal Rule of Civil Procedure 20 require that, in order to properly join plaintiffs, their claims must arise out of the "same transaction, occurrence, or series of transactions or occurrences." Mo. Sup. Ct. R. 52.05; Fed. R. Civ. P. 20. Here, the only common thread among the 65 plaintiffs is that they allegedly injured themselves while wearing Shape-ups.

40. Rather than arising from the same occurrence or series of occurrences, Plaintiffs' alleged injuries arise from unique factual situations with complicated and individualized questions of causation. Indeed, the inquiry into each plaintiff's injury will require a fact intensive proceeding and thorough plaintiff-specific analysis. Discovery and trial will require, amongst other individualized inquiries, an evaluation of each plaintiff's experience with and use

of the shoes; the biomechanical properties of each alleged injury or incident; the surface on which each plaintiff sustained his or her injury; the condition of each plaintiff's shoes at the time of the injury; each plaintiff's medical condition at the time of the injury; each plaintiff's alleged mechanism of injury; and the extent of medical damage allegedly sustained by each plaintiff. Taken together, these varied factual issues demonstrate that the claims alleged do not arise out of the same transaction or occurrence, or series of transactions or occurrences. Instead, they arise out of many individual and unrelated occurrences whose only common link is the use of a similar product and representation by the same lawyers.

41. Additionally, the misjoinder present here is egregious because all evidence suggests that this litigation, as well as the five other contemporaneously filed lawsuits alleging identical claims, were designed specifically to avoid diversity jurisdiction and skirt coordination in the MDL. Critically, each of the six lawsuits includes only a few California plaintiffs. These plaintiffs were cherry picked, separated into small groups, and placed in each case in a strategic attempt to forum shop.

42. In light of these plaintiffs' egregious and fraudulent misjoinder, their citizenship is properly disregarded for the purposes of evaluating diversity. As a result, the remaining parties are sufficiently diverse because all Defendants are citizens of different states than all properly joined plaintiffs.

WHEREFORE, Defendants Skechers U.S.A., Inc., Skechers U.S.A., Inc. II, and Skechers Fitness Group respectfully request that the above-captioned action be removed from the Circuit Court of the City of St. Louis, State of Missouri, to this Court, and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**BROWN & JAMES, P.C.**

/s/ John P. Torbitzky
Bradley R. Hansmann, #53160MO
David R. Buchanan, #29228MO
John P. Torbitzky, #65233MO
800 Market Street, 11th Floor
St. Louis, Missouri 63101-2501
314-421-3400
314-421-3128 – FAX
bhansmann@bjpc.com
dbuchanan@bjpc.com
jtorbitzky@bjpc.com
*Attorneys for Defendant*


**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was mailed, first class, postage prepaid, this 23rd day of February, 2015, to:

John J. Driscoll
The Driscoll Law Firm, P.C.
One Metropolitan Square
211 North Broadway, 40th Floor
St. Louis, MO 63102
314-932-3232
314-932-3233 – FAX
john@thedriscollfirm.com
*Attorney for Plaintiff*


/s/ John P. Torbitzky

#12184472