**MISSOURI CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**
**(CITY OF ST. LOUIS)**

MICHELE SIMMONS, MARY SCHLENK,  ) CASE NO.: _____
CAROL STOCKTON,JANET THOMPSON,  )
PAMELA WILLIAMS, WANDA WILSON,  )
JESSICA POTTER, ANGELE FRANKLIN,  ) **JURY TRIAL DEMANDED**
RICKEY DEVARGAS, MARYBETH BROWN,  )
NORMA DEAN, VICKI FREEMAN, CARLA  )
HALL, KELLI WINEGARNER, DEBBIE  )
BOARDMAN, ROXANNE MCMURTREY,  )
KARLIE GERAGHTY, DEBORAH MCGINNIS,  )
SUSAN SHUSTER, FRANCES WIERNUSZ,  )
LISA BOWERSOX, JAY NOVELL, TRACY  )
UKADIKE, GREGORY ISAACS, LACIE  )
STEWART, DENNIS KRAUSE, GINA BEU,  )
LORI CHASE, HANNA HAREZLAK, MARY  )
ANN MILLER, BRANDON SCOTT, DAVID  )
THOMPSON, DEBORAH VOLKERT, CAROL  )
WADDELL, HILLARY WALLS-STEWART,  )
BERTHETTA ROBINSON, LONNA ROMERO,  )
CHARITY AUDET, MADELYNN BARTON,  )
LAUREN COLVILLE, CARY DAVIS, LISA  )
FAULKNER-JONES, NANCY GUNKEL,  )
MIMMY POLAN, LABORE SESSIONS, JERYL  )
SEWARD, CHERYL SMITH, MICHAEL  )
STEVENS, DEBBIE WIENER, MELIA WILSON,  )
JOHN KREGER, SANDRA AMUNDSON,  )
MAUREEN BARBRICK, KATHLEEN  )
FLETCHER, DEBI GRANT, CATHRYN  )
HOUSEY, VENORIS BUMPUS, KAREN  )
KENNEDY-EVANS, PRISCILLA MOORE,  )
ROBIN PYRLIK, KAREN STRUB, GWEN  )
RYAN, VICKI INGBER, DARLENE BROWN,  )
AND HAZEL DOHERTY,  )
 )
   Plaintiffs,  )
 )
 )
 )
 vs.  )
 )
 )

1

SKECHERS USA, INC.,

    SERVE:
        Registered Agent
        Corporation Service Company
        2711 Centerville Rd., Suite 400
        Wilmington, DE 19808

SKECHERS USA, INC. II,

    SERVE:
        Registered Agent
        Corporation Service Company
        2711 Centerville Rd., Suite 400
        Wilmington, DE 19808

SKECHERS FITNESS GROUP

    SERVE:
        Registered Agent
        Philip Paccione
        228 Manhattan Beach Blvd.
        Manhattan Beach, CA 90266

        Defendants.

---

## PETITION

    Plaintiffs, by and through undersigned attorneys, bring this action alleging the following upon information and belief:

## NATURE OF THE CASE

    1.    This lawsuit concerns personal injury related to Plaintiffs' use of Skechers Shape-ups toning shoes marketed and sold by defendants.

    2.    Plaintiffs allege that Defendants Skechers USA, Inc., Skechers USA, Inc. II, and Skechers Fitness Group knowingly or negligently manufactured, marketed, distributed, and sold

defectively designed shoes without adequate warnings.

## JURISDICTION AND VENUE

3.      Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over the defendants, because Defendants are present in the State of Missouri, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

4.      This court has personal jurisdiction over the Defendants pursuant to and consistent with Missouri's long arm statute (R.S.Mo. §506.500) and the Constitutional requirements of Due Process in that the Defendants, acting through their agents or apparent agents, committed one or more of the following:

        a. The transaction of any business within the state;

        b. The making of any contract within the state;

        c. The commission of a tortious act within this state; and

        d. The ownership, use, or possession of any real estate situated within this state.

5.      Requiring Defendants to litigate these claims in Missouri does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution. Defendants operate multiple stores within the State of Missouri and derive substantial revenue from the sale of their products within the state of Missouri. All Plaintiffs' claims arise in part from conduct Defendants purposely directed to Missouri including but not limited to the sale and marketing of their products.

6.      The Plaintiffs' claims arise out of Defendants' design, marketing and sale of Skechers Shape-ups in the State of Missouri.

7.      These Defendants regularly conduct or solicit business and derive substantial

3

revenue from goods used or consumed in, inter alia, the State of Missouri.

8.     Additionally, certain Plaintiffs suffered injury from the Defendants' products in Missouri, City of St. Louis. Accordingly, venue is proper under R.S.Mo. §508.010.

9.     Plaintiffs each individually seek relief that is within the jurisdictional limits of the Court in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## JOINDER OF PLAINTIFFS

10.     Joinder of Plaintiffs in this Petition is proper pursuant to R.S.Mo. §507.040 (1) because Plaintiffs' right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences and involves common questions of law and fact.

## PARTIES – DEFENDANTS

11.     The Defendant, Skechers U.S.A., Inc., is a corporation organized and existing under the laws of the state of Delaware, with its principle place of business at 228 Manhattan Beach Blvd., Manhattan Beach, CA 90266.  At all times relevant hereto, Skechers conducted regular and sustained business in Missouri and specifically St. Louis County and within the city of St. Louis by labeling, marketing, distributing, promoting and selling its products in Missouri and specifically St. Louis County and within the city of St. Louis.

12.     The Defendant, Skechers U.S.A., Inc. II, is a corporation organized and existing under the laws of the state of Delaware, with its principle place of business at 228 Manhattan Beach Blvd., Manhattan Beach, CA 90266.  At all times relevant hereto, Skechers conducted regular and sustained business in Missouri and specifically St. Louis County and within the city of St. Louis by labeling, marketing, distributing, promoting and selling its products in Missouri and specifically St. Louis County and within the city of St. Louis.

13.     Skechers Fitness Group is a trademarked subsidiary of Skechers U.S.A., Inc. II

with its principle place of business at 228 Manhattan Beach Blvd., Manhattan Beach, CA 90266. At all times relevant hereto, Skechers conducted regular and sustained business in Missouri and specifically St. Louis County and within the city of St. Louis, and Pennsylvania by labeling, marketing, distributing, promoting and selling its products in Missouri and specifically St. Louis County and within the city of St. Louis.

14.    Defendants Skechers USA, Inc., Skechers USA, Inc. II, and Skechers Fitness Group shall herein be referred to collectively as "Defendants."

### PARTIES – PLAINTIFFS

15.    Plaintiff, Michelle Simmons is and was at all times alleged herein a citizen of the State of Missouri and currently resides in the city of St. Louis at 971 Riverview Blvd., St. Louis, Missouri 63147 and brings this action in her individual capacity.

16.    Plaintiff, Michelle Simmons, purchased a pair of Skechers Shape-ups in or about 2010 from the Mills in the city of St. Louis, Missouri. Plaintiff began wearing these shoes during her daily activities in the city of St. Louis, Missouri. On or about April, 1, 2012, Michelle Simmons was walking in Forest Park in the city of St. Louis, Missouri. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider for medical testing which demonstrated nerve damage of the right leg as a result of her Skechers Shape-ups.

17.    Plaintiff Mary Schlenk is and was at all times alleged herein a citizen of the State of Missouri and currently resides at 6614 Bandstand Lane, Cedar Hill, Missouri 63016 and brings this action in her individual capacity.

18.     Plaintiff Mary Schlenk purchased a pair of Skechers Shape-ups in or about February of 2010 from Shoe Carnival in Cedar Hill, Missouri. Plaintiff began wearing these shoes during her daily activities in Cedar Hill, Missouri. On or about January 1, 2011, Plaintiff Mary Schlenk was walking on a flat wood step outside her home. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to SSM Hospital where medical testing demonstrated a fractured ankle.

19.     Plaintiff, Carol Stockton, is and was at all times alleged herein a citizen of the State of Missouri and currently resides at 5847 Farm Rd. 1070, Purdy, Missouri 65734 and brings this action in her individual capacity.

20.     Plaintiff Carol Stockton purchased a pair of Skechers Shape-ups in or about March of 2009 from Shoe Carnival in Springfield, Missouri. Plaintiff began wearing these shoes during her daily activities in Purdy, Missouri. In or about May of 2010, Carol Stockton was walking outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Cox Hospital where medical testing demonstrated a torn meniscus.

21.     Plaintiff, Janet Thompson, is and was at all times alleged herein a citizen of the State of Missouri and currently resides at 1719 South Rabbit Lane, Nixa, Missouri 65714 and brings this action in her individual capacity.

22.     Plaintiff Janet Thompson purchased a pair of Skechers Shape-ups on or about May 15, 2011 from a Skechers Store, in Branson, Missouri. Plaintiff began wearing these shoes during her daily activities in Nixa, Missouri. On or about July 11, 2011, Janet Thompson was

walking outside down concrete stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall down the stairs resulting in excruciating pain. Plaintiff presented to a medical provider where x-rays demonstrated a fracture of the left ankle.

23.     Plaintiff, Pamela Williams, is and was at all times alleged herein a citizen of the State of Missouri and currently resides at 2908 State Route EE, Kennett, Missouri 63857 and brings this action in her individual capacity.

24.     Plaintiff Pamela Williams purchased a pair of Skechers Shape-ups in or about 2009 from Spage in Kenton, Missouri. After wearing the shoes for 25-45 minute period for two weeks after purchase, Plaintiff began wearing these shoes during her daily activities in Kennett, Missouri. On or about December 12, 2009, Pamela Williams was walking inside on a flat linoleum surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward causing her to fall resulting in excruciating pain. Plaintiff presented to a hospital emergency room where x-rays demonstrated a fracture of the shoulder.

25.     Plaintiff, Wanda Wilson, is and was at all times alleged herein a citizen of the State of Missouri and currently resides at 17634 Mockingbird Road, Warsaw, Missouri 63855 and brings this action in her individual capacity.

26.     Plaintiff Wanda Wilson purchased a pair of Skechers Shape-ups in or about 2013 from Shoe Carnival in Lake Ozark, Missouri. Plaintiff began wearing these shoes during her daily activities in Warsaw, Missouri. On or about September 7, 2013, Wanda Wilson was walking outdoors on flat wooden steps. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in

excruciating pain. Plaintiff presented to her medical provider where medical testing demonstrated a fracture of the ankle.

27.     Plaintiff, Jessica Potter, is and was at all times alleged herein a citizen of the State of California and currently resides at 1617 Audubon Rd, Mount Shasta, California 96067 and brings this action in her individual capacity.

28.     Plaintiff Jessica Potter purchased a pair of Skechers Shape-ups in or about December of 2010 from JC Penney's in Yreka, California. Plaintiff began wearing these shoes during her daily activities in Mt. Shasta, California. On or about June 19, 2012, Jessica Potter was walking down stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Mercy Medical Center for medical testing which demonstrated torn ligaments in her foot. Plaintiff was also diagnosed a severe ankle sprain.

29.     Plaintiff, Angele Franklin, is and was at all times alleged herein a citizen of the State of California and currently resides at 377 Bottlebrush Court, Suisun City, California 94585 and brings this action in her individual capacity.

30.     Plaintiff Angele Franklin purchased a pair of Skechers Shape-ups in or about 2011 from Macy's in Fairfield, California. Plaintiff began wearing these shoes during her daily activities in Suisun City, California. On or about March 18, 2012, Angele Franklin was walking on a flat cement surface in her garage. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Prathima Jayaram for medical testing which demonstrated a fracture of the left ankle which required medical treatment.

31.   Plaintiff, Rickey DeVargas, is and was at all times alleged herein a citizen of the State of New Mexico and currently resides at 1015 Camino Redondo, Santa Fe, New Mexico 87505 and brings this action in his individual capacity.

32.   Plaintiff Rickey DeVargas purchased a pair of Skechers Shape-ups in or about 2012 from a Macy's catalog. Plaintiff began wearing these shoes during his daily activities in Santa Fe, New Mexico. In or about 2012, Rickey DeVargas was walking outdoors on a flat cement sidewalk. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to St Vincent Regional Medical Center where medical testing demonstrated a twisted left ankle as well as a pin line fracture of the ankle.

33.   Plaintiff, Marybeth Brown, is and was at all times alleged herein a citizen of the State of New Mexico and currently resides at 4691 Arabela Dr., Las Cruces, New Mexico 88012 and brings this action in her individual capacity.

34.   Plaintiff Marybeth Brown purchased a pair of Skechers Shape-ups in December of 2009 from an internet website. Plaintiff began wearing these shoes during her daily activities in Las Cruces, New Mexico. On or about March 3, 2013, Plaintiff Marybeth Brown was walking outside on a flat cement sidewalk. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her to collapse causing her to fall resulting in excruciating pain in both of her knees. Plaintiff presented to Dr. Michael McGuire for medical testing which demonstrated a tear of the meniscus of the right knee and tear of the meniscus of the left knee as a result of her Skechers Shape-ups.

35.     Plaintiff, Norma Dean, is and was at all times alleged herein a citizen of the State of Ohio and currently resides at 30 East Central PKWY, Apt. 402, Cincinnati, Ohio 45202 and brings this action in her individual capacity.

36.     Plaintiff Norma Dean purchased a pair of Skechers Shape-ups on or about the fall of 2009 from Dillards in Crestview, Kentucky. Plaintiff began wearing these shoes during her daily activities in Cincinnati, Ohio. On or about January 20 2012, Norma Dean was walking outside on a flat, concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Vincent Sammarco where medical testing demonstrated a stress fracture in her left metatarsal and a fractured right wrist.

37.     Plaintiff, Vicki Freeman, is and was at all times alleged herein a citizen of the State of Ohio and currently resides at 3 Chestnut St., Laura, Ohio 45337 and brings this action in her individual capacity.

38.     Plaintiff Vicki Freeman asked for and received a pair of Skechers Shape-ups in or about March of 2010 from Elder Beerman in Beavercreek, Ohio. Plaintiff began wearing these shoes during her daily activities in Laura, Ohio. On or about July 7, 2010, Vicki Freeman was walking outdoors on a flat, concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Miami Valley South where medical testing demonstrated a fractured finger and a fractured elbow.

39.     Plaintiff, Carla Hall, is and was at all times alleged herein a citizen of the State of Ohio and currently resides at 747 Buckeye Street, Miamisburg, Ohio 45342 and brings this action in her individual capacity.

40.     Plaintiff Carla Hall purchased a pair of Skechers Shape-ups in or about 2009 from Shoebilee in Dayton, Ohio. Plaintiff began wearing these shoes during her daily activities in Miamisburg, Ohio. In or about February of 2009, Carla Hall was walking indoors on a flat, tile surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Kevin Sunsheene where medical testing demonstrated a fractured foot.

41.     Plaintiff, Kelli Winegarner, is and was at all times alleged herein a citizen of the State of Ohio and currently resides at 805 E. Stroop Rd., Kettering, Ohio 45429 and brings this action in her individual capacity.

42.     Plaintiff Kelli Winegarner purchased a pair of Skechers Shape-ups in or about December of 2008 from Skechers Outlet Store in Monroe, Ohio. Plaintiff began wearing these shoes during her daily activities in Kettering, Ohio. On or about May 30, 2009, Kelli Winegarner was walking indoors on a flat, marble surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Kettering Medical Center where medical tests demonstrated a fractured left knee cap.

43.     Plaintiff, Debbie Boardman, is and was at all times alleged herein a citizen of the State of Oklahoma and currently resides at 2008 NW 40th St., Oklahoma City, Oklahoma 73118 and brings this action in her individual capacity.

44.     Plaintiff Debbie Boardman purchased a pair of Skechers Shape-ups on or about April 17, 2010 from Dillard's in Oklahoma City, Oklahoma. Plaintiff began wearing these shoes during her daily activities in Oklahoma City, Oklahoma. On or about December 23, 2010, Debbie Boardman was walking outside on a flat cement surface. Suddenly and without warning,

Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff Debbie Boardman presented to Baptist Medical Center where x-rays demonstrated three fractures to the foot.

45.     Plaintiff, Roxanne McMurtrey, is and was at all times alleged herein a citizen of the State of Oklahoma and currently resides at P.O. Box 143, Haileyville Oklahoma 74546 and brings this action in her individual capacity.

46.     Plaintiff Roxanne McMurtrey, purchased a pair of Skechers Shape-ups in or about May 2010 from Shoe Department in McAlester, Oklahoma. Plaintiff began wearing these shoes during her daily activities in Haileyville, Oklahoma. On or about February 13, 2011, Roxanne McMurtrey was walking outside on a flat cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff Roxanne McMurtrey presented to McAlester Regional Health Center where x-rays demonstrated a fracture to the shoulder and fracture to the left wrist.

47.     Plaintiff, Karlie Geraghty, is and was at all times alleged herein a citizen of the State of Oregon and currently resides at P.O. Box 1459, Brookings, Oregon 97415 and brings this action in her individual capacity.

48.     Plaintiff Karlie Geraghty, asked for and received a pair of Skechers Shape-ups in or about April of 2010 from Fred Meyer's Supermarket in Brookings, Oregon. Plaintiff began wearing these shoes during her daily activities in Brookings, Oregon. In or about July of 2010, Karlie Geraghty was outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in

excruciating pain. Plaintiff presented to Setter Coast Hospital where medical testing determined she suffered a fractured wrist.

49.     Plaintiff, Deborah McGinnis, is and was at all times alleged herein a citizen of the State of Pennsylvania and currently resides at 1137 Moravia St., Fountain Hill, Pennsylvania 97415 and brings this action in her individual capacity.

50.     Plaintiff Deborah McGinnis purchased a pair of Skechers Shape-ups in or about January of 2009 from a retail store in Pennsylvania. Plaintiff Ms. McGinnis began wearing and using these shoes during her daily activities in Fountain Hill, Pennsylvania. On or about July 26, 2010 Plaintiff, Deborah McGinnis was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Ms. McGinnis presented to her medical provider in Pennsylvania where medical testing demonstrated three fractures of the left ankle.

51.     Plaintiff, Susan Shuster, is and was at all times alleged herein a citizen of the State of Pennsylvania and currently resides at 737 Rively Ave., Glenolden, Pennsylvania 19036 and brings this action in her individual capacity.

52.     Plaintiff Susan Shuster purchased a pair of Skechers Shape-ups in or about January of 2010 from Kohl's in Glenolden, Pennsylvania. Plaintiff began wearing and using these shoes during her daily activities in Glenolden, Pennsylvania. On or about April 23, 2011 Plaintiff Susan Shuster was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her medical provider in Pennsylvania for medical testing which demonstrated a fracture of the left ankle.

53.     Plaintiff, Frances Wiernusz, is and was at all times alleged herein a citizen of the State of Pennsylvania and currently resides at 10 Villa Dr. Old Forge, Pennsylvania 18518 and brings this action in her individual capacity.

54.     Plaintiff Frances Wiernusz, purchased a pair of Skechers Shape-ups in or about May 2009 from Bon Ton in Wilkes-Barre, Pennsylvania. Plaintiff began wearing and using these shoes during her daily activities in Old Forge, Pennsylvania. On or about January 6, 2010, Plaintiff Frances Wiernusz was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Frances Wiernusz presented to Wyoming Valley Healthcare Emergency Room for medical testing which demonstrated a fracture of the left ankle.

55.     Plaintiff, Lisa Bowersox, is and was at all times alleged herein a citizen of the State of Tennessee and currently resides at 850 Elder Lane, Kodak, Tennessee 37764 and brings this action in her individual capacity.

56.     Plaintiff Lisa Bowersox purchased a pair of Skechers Shape-ups in or about 2012 in Morris Town, Tennessee. Plaintiff began wearing these shoes during her daily activities in Koak, Tennessee. On or about May 13, 2013, Lisa Bowersox was walking indoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Tim Thomas who ordered medical testing which demonstrated a torn meniscus of the left knee.

57.     Plaintiff, Jay Novell, is and was at all times alleged herein a citizen of the State of Tennessee and currently resides at 2146 Eveningview Dr., Memphis, Tennessee 38134 and brings this action in her individual capacity.

58.     Plaintiff Jay Novell purchased a pair of Skechers Shape-ups in or about 2011 in Memphis, Tennessee. Plaintiff began wearing these shoes during his daily activities in Memphis, Tennessee. In or about July of 2011, Jay Novell was walking outdoors on a flat concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to Concentra Minor Medical Center where medical testing demonstrated torn tendons and ligaments of the rotator cuff. Plaintiff was also diagnosed with a fractured right foot.

59.     Plaintiff, Tracy Ukadike, is and was at all times alleged herein a citizen of the State of Tennessee and currently resides at 598 Shady Crest Drive, La Vergne, Tennessee 37086 and brings this action in her individual capacity.

60.     Plaintiff Tracy Ukadike, purchased a pair of Skechers Shape-ups in or about October 2009 from Shoe Carnival, Antioch, Tennessee. Plaintiff began wearing these shoes during her daily activities in Lakewood, Alaska. In or about April of 2010, Tracy Ukadike was walking indoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to StoneCrest Hospital for medical testing which demonstrated a fracture of the right foot.

61.     Plaintiff, Gregory Isaacs, is and was at all times alleged herein a citizen of the State of Texas and currently resides at 1600 W. Pleasant Run Rd., Desoto, Texas 75115 and brings this action in his individual capacity.

62.     Plaintiff Gregory Isaacs purchased a pair of Skechers Shape-ups on or about May 18, 2010 from Academy Sports & Outdoors in Dallas, Texas. Plaintiff began wearing these shoes during his daily activities in DeSoto, Texas. After wearing his Skechers Shape-ups, Plaintiff

Gregory Isaacs began to develop severe pain in his knees and in his back beginning in or around December 2010. When the pain did not subside, Plaintiff Gregory Isaacs presented to a medical provider for medical testing which demonstrated three collapsed vertebrae, a tear to the meniscus of the right knee, and a tear to the meniscus of the left knee as a result of his Skechers Shape-ups. In March 2011, Plaintiff Gregory Isaacs was also diagnosed with a fracture of his right tibia and fibula.

63.     Plaintiff, Lacie Stewart, is and was at all times alleged herein a citizen of the State of Texas and currently resides at 12280 Bud Cross Road, Fort Worth, Texas 76179 and brings this action in her individual capacity.

64.     Plaintiff Lacie Stewart purchased a pair of Skechers Shape-ups in or about September of 2010 from a Sketcher's Outlet. Plaintiff began wearing these shoes during her daily activities in Texas. On or about December 2010, Plaintiff Lacie Stewart was walking outdoors on a level dirt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to a medical provider by ambulance in Texas where medical testing demonstrated a fracture of the left ankle.

65.     Plaintiff, Dennis Krause, is and was at all times alleged herein a citizen of the State of Texas and currently resides at 161 Smitty's Lane Marble Falls, Texas 78654 and brings this action in his individual capacity.

66.     Plaintiff Dennis Krause purchased a pair of Skechers Shape-ups on or about January 10, 2011 purchased from Payless Shoe Store in Marble Falls, Texas. Plaintiff began wearing these shoes during his daily activities in Marble Falls, Texas. On or about January 19, 2011, Dennis Krause was walking outside on a flat paved surface. Suddenly and without

warning, Skechers Shape-ups toning shoe pronated inward and caused his right ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to Seaton Williamson County Hospital where x-rays demonstrated a fracture of the left ankle.

67.     Plaintiff, Gina Beu, is and was at all times alleged herein a citizen of the State of Washington and currently resides at 2111 SW 352nd St., Apt 32, Federal Way, Washington 98023 and brings this action in her individual capacity.

68.     Plaintiff Gina Beu purchased a pair of Skechers Shape-ups in or about July of 2011 from Fred Meyer in Covington, Washington. Plaintiff began wearing these shoes during her daily activities in Federal Way, Washington. On or about June 6, 2013, Gina Beu was walking down flat, concrete stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Swedish Medical Center where medical testing demonstrated a fractured right humerus bone. Plaintiff was also diagnosed with a dislocated right shoulder.  A medical provider from the Swedish Medical Center recommended that Plaintiff undergo emergency surgery to repair the injury.

69.     Plaintiff, Lori Chase, is and was at all times alleged herein a citizen of the State of Washington and currently resides at P.O. Box 251, Four Lakes, Washington 99014 and brings this action in her individual capacity.

70.     Plaintiff Lori Chase purchased a pair of Skechers Shape-ups in or about August of 2010 from NEX in Oak Harbor, Washington. Plaintiff began wearing these shoes during her daily activities in Four Lakes, Washington. On or about November 11, 2012, Lori Chase was walking outdoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in

excruciating pain. Plaintiff presented to Providence Holy Family Hospital where medical testing demonstrated a torn meniscus of the right knee, requiring surgery.

71.     Plaintiff, Hanna Harezlak, is and was at all times alleged herein a citizen of the State of Washington and currently resides at 7474 Sunset Drive, Blaine, Washington 98230 and brings this action in her individual capacity.

72.     Plaintiff Hanna Harezlak purchased a pair of Skechers Shape-ups in or about 2011 from Costco in Bellingham, Washington. Plaintiff began wearing these shoes during her daily activities in Blaine, Washington. On or about November 17, 2011, Plaintiff Hanna Harezlak was walking outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Peace Health Hospital where medical testing demonstrated a trimalleolar fracture of the foot.

73.     Plaintiff, Mary Ann Miller, is and was at all times alleged herein a citizen of the State of Washington and currently resides at N. 203 McDonald Rd., Spokane Valley, Washington 99216 and brings this action in her individual capacity.

74.     Plaintiff Mary Ann Miller purchased a pair of Skechers Shape-ups in or about 2011 from Fred Meyer in Spokane Valley, Washington. Plaintiff began wearing these shoes during her daily activities in Spokane Valley, Washington. On or about February 10, 2012, Mary Ann Miller was walking outside on flat steps. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Valley General Hospital where medical tests demonstrated a fracture of the tibia and a fracture of the fibula, requiring surgical repair.

75.     Plaintiff, Brandon Scott, is and was at all times alleged herein a citizen of the State of Washington and currently resides at 546 4th Ave. SW, Castle Rock, Washington 98611 and brings this action in his individual capacity.

76.     Plaintiff Brandon Scott purchased a pair of Skechers Shape-ups in or about October of 2012 from Ross in Longview, Washington. Plaintiff began wearing these shoes during his daily activities in Castle Rock, Washington. On or about July 5, 2013, Brandon Scott was walking outdoors on a flat. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to Dr. Kung in Clinton, Washington where medical testing demonstrated a tear of the meniscus and a tear of the anterior cruciate ligament (ACL).

77.     Plaintiff, David Thompson, is and was at all times alleged herein a citizen of the State of Washington and currently resides at 15214 E. 1st Avenue, Veradale, Washington 99037 and brings this action in his individual capacity.

78.     Plaintiff David Thompson purchased a pair of Skechers Shape-ups in or about May of 2011 from JC Penney's in Spokane Valley, Washington. Plaintiff began wearing these shoes during his daily activities in Veradale, Washington. In or about July of 2011, David Thompson was walking inside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to Chas Clinic where medical testing demonstrated a sprained ankle. Plaintiff was also diagnosed with a complete dental avulsion of his tooth.

79.     Plaintiff, Deborah Volkert, is and was at all times alleged herein a citizen of the State of Washington and currently resides at PO Box 159, North Lakewood, Washington 98259 and brings this action in her individual capacity.

80.     Plaintiff Deborah Volkert requested and received a pair of Skechers Shape-ups in or about December of 2011 from Ross in Washington. Plaintiff began wearing these shoes during her daily activities in North Lakewood, Washington. On or about July of 2012, Deborah Volkert was walking outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to St. Joseph's Medical Center where medical testing demonstrated a torn Achilles tendon. Plaintiff was also diagnosed with tears of three other ligaments.

81.     Plaintiff, Carol Waddell, is and was at all times alleged herein a citizen of the State of Washington and currently resides at P.O. 333, Buckley, Washington 98321 and brings this action in her individual capacity.

82.     Plaintiff Carol Waddell purchased a pair of Skechers Shape-ups on or about July 15, 2010 from Kohl's in Covington, Washington. Plaintiff began wearing these shoes during her daily activities in Enumclaw, Washington. On or about March 18, 2011, Carol Waddell was walking indoors on a flat surface in her home. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Enumclaw Medical Center where medical testing demonstrated a severely dislocated left ankle.

83.     Plaintiff, Hillary Walls-Stewart, is and was at all times alleged herein a citizen of the State of Washington and currently resides at 1216 East 40th Street, Tacoma, Washington 98404 and brings this action in her individual capacity.

84.     Plaintiff Hillary Walls-Stewart purchased a pair of Skechers Shape-ups in or about 2010 in Spanaway, Washington. Plaintiff began wearing these shoes during her daily

activities in Everett, Washington. In or about May of 2012, Hillary Walls-Stewart was walking outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Baker Medical Center where medical testing demonstrated a fracture of the foot.

85.     Plaintiff, Berthetta Robinson, is and was at all times alleged herein a citizen of the State of Washington and currently resides at 12601 68th Avenue South, Apt. 14A, Seattle, Washington 98178 and brings this action in her individual capacity.

86.     Plaintiff Berthetta Robinson purchased a pair of Skechers Shape-ups in or about July of 2009 from Kohl's in Seattle, Washington. Plaintiff began wearing these shoes during her daily activities in Seattle, Washington. On or about July 1, 2010, Berthetta Robinson was walking outside on a flat, concrete surface on her porch. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to St. Francis Hospital where medical testing demonstrated a torn meniscus of the right knee.

87.     Plaintiff, Lonna Romero, is presently a citizen of the State of Florida and currently resides at 231 Stokes Road, Lake Wales, Florida 33898 and brings this action in her individual capacity. However, at the time of her Skechers related injury, Plaintiff was present in the State of Washington.

88.     Plaintiff Lonna Romero, asked for and received a pair of Skechers Shape-ups in or about November of 2008. Plaintiff began wearing these shoes during her daily activities in Lake Wales, Florida. In or about November of 2008, Plaintiff Lonna Romero was walking outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe

pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Richmond Regional Hospital where medical tests demonstrated a torn meniscus in her right knee.

89.     Plaintiff, Charity Audet, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 4420 Foxfire Lane, Huntingtown, Maryland 20639 and brings this action in her individual capacity.

90.     Plaintiff Charity Audet purchased a pair of Skechers Shape-ups on or about April 1, 2013 from a website. Plaintiff began wearing these shoes during her daily activities in Chesapeake Beach, Maryland. On or about June 25, 2013, Charity Audet was walking on a flat concrete pavement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Calvert Memorial Hospital where x-rays demonstrated a fracture of the fifth metatarsal of the right foot.

91.     Plaintiff, Madelynn Barton, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 2013 Grinnalds Avenue, Baltimore, Maryland 21230 and brings this action in her individual capacity.

92.     Plaintiff Madelynn Barton purchased a pair of Skechers Shape-ups on or about 2011 from Costco in Glen Burnie, Maryland. Plaintiff began wearing these shoes during her daily activities in Baltimore, Maryland. On or about September 23, 2012, Madelynn Barton was walking indoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where x-rays demonstrated a

fracture of the tibia and a fracture of the humerus. Plaintiff also sustained an injury to the tendons of her hand.

93.     Plaintiff, Lauren Colville, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 8235 Dunfield Port, Severn, Maryland 21144 and brings this action in her individual capacity.

94.     Plaintiff Lauren Colville purchased a pair of Skechers Shape-ups on or about January 2011 from a Famous Footwear Outlet in Queenstown, Maryland. Plaintiff began wearing these shoes during her daily activities in Severn, Maryland. Beginning on or about February 2011, after wearing these shoes for approximately two months consistently in her daily activities, Plaintiff Lauren Colville began to experience pain in her right knee. When the pain did not subside, Plaintiff presented to her medical provider for medical testing where medical testing demonstrated a torn meniscus of her right knee.

95.     Plaintiff, Cary Davis, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 4401 West Forrest Park Avenue, Baltimore, Maryland 21207 and brings this action in his individual capacity.

96.     Plaintiff Cary Davis purchased a pair of Skechers Shape-ups in February 2011 from a Skechers Outlet in Hagerstown, Maryland. Plaintiff began wearing these shoes during his daily activities in Baltimore, Maryland. On or about July 2012, Cary Davis was walking outside on a flat concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his right ankle to collapse causing him to fall onto his right arm resulting in excruciating pain. Plaintiff presented to Dr. Forthman of Greater Chesapeake Hand Specialists for medical testing which demonstrated a torn rotator cuff of the right shoulder and a torn bicep muscle of the right arm.

97.     Plaintiff, Lisa Faulkner-Jones, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 2612 Ballston Court, Mitchellville, Maryland 20721 and brings this action in her individual capacity.

98.     Plaintiff Lisa Faulkner-Jones purchased a pair of Skechers Shape-ups on or about February 8, 2011 from Costco in Lanham, Maryland. Plaintiff began wearing these shoes during her daily activities in Mitchellville, Maryland. In or about January 2012, Lisa Faulkner-Jones was walking on a flat concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward causing her to fall resulting in excruciating pain in her knee and ankle. Plaintiff presented to Bowie Urgent Care medical testing demonstrated a torn meniscus.

99.     Plaintiff, Nancy Gunkel, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 5934 Central Ave., Baltimore, Maryland 21207 and brings this action in her individual capacity.

100.     Plaintiff Nancy Gunkel purchased a pair of Skechers Shape-ups on or about November 21, 2011 from the Skechers website. Plaintiff began wearing these shoes during her daily activities in Baltimore, Maryland. On or about April 26, 2013, Nancy Gunkel was walking down concrete stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to St. Agnes Hospital where x-rays demonstrated a fracture of the left ankle.

101.     Plaintiff, Mimmy Polan, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 2509 Spencer Rd., Silver Spring, Maryland 20910 and brings this action in her individual capacity.

102.     Plaintiff Mimmy Polan purchased a pair of Skechers Shape-ups on or about December 2011 from Marshall's in Silver Spring, Maryland. Plaintiff began wearing these shoes

24

during her daily activities in Silver Spring, Maryland. On or about March 3, 2013, Mimmy Polan was walking on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. James Gasho, an orthopedic surgeon, for x-rays which demonstrated fractures of the fibula of the left ankle.

103.    Plaintiff, Labore Sessions, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 28 W. 27th Street, Apt 106, Baltimore, Maryland 21218 and brings this action in her individual capacity.

104.    Plaintiff Labore Sessions purchased a pair of Skechers Shape-ups on or about August 1, 2012 from Marshall's in Baltimore, Maryland. Plaintiff began wearing these shoes during her daily activities in Baltimore, Maryland. On or about December 29, 2102, Labore Sessions was walking on a flat concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left leg to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Maryland General Hospital Emergency Room where medical testing demonstrated fluid in her knee and other knee damage of the left knee.

105.    Plaintiff, Jeryl Seward, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 2112 Whitehall Road, Unit 2B, Frederick, Maryland 21702 and brings this action in her individual capacity.

106.    Plaintiff Jeryl Seward requested and received a pair of Skechers Shape-ups on or about December 30, 2010. Plaintiff began wearing these shoes during her daily activities in Frederick, Maryland. On or about September 21, 2012, Jeryl Seward was walking on a flat pavement sidewalk outdoors. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating

pain. Plaintiff presented to Frederick Memorial Hospital Emergency Room where x-rays demonstrated a stress fracture of the left foot. Plaintiff Jeryl Seward was also diagnosed with three torn ligaments of the left foot.

107.    Plaintiff, Cheryl Smith, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 23 Greenleaf Rd., Baltimore, Maryland 21234 and brings this action in her individual capacity. Plaintiff Cheryl Smith purchased a pair of Skechers Shape-ups in or about January 2011 from Kohl's in Belair, Maryland. Plaintiff began wearing these shoes during her daily activities in Baltimore, Maryland. On or about April 26, 2011, Cheryl Smith was walking outside on a flat paved street. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward causing her to fall resulting in excruciating pain. Plaintiff presented to Patient First in Baltimore, Maryland where x-rays demonstrated fractures on the top of the foot. Cheryl Smith was also diagnosed with a sprained ankle, a torn ligament, and a sprained knee as a result of her Skechers Shape-ups.

108.    Plaintiff, Michael Stevens, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 9066 Canterbury Riding, Laurel, Maryland 20723 and brings this action in his individual capacity.

109.    Plaintiff Michael Stevens purchased a pair of Skechers Shape-ups in or about April 2011 from Ross in Gaithersburg, Maryland. Plaintiff began wearing these shoes during his daily activities in Laurel, Maryland. On or about June 2010, Michael Stevens was walking outdoors on a flat asphalt driveway. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward causing him to fall resulting in excruciating pain. Plaintiff presented to his medical provider, Dr. Abulfaraq Suhair. Medical testing of Plaintiff Michael Stevens' back demonstrated herniated L4 and L5 disks.

110.     Plaintiff, Debbie Wiener, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 2124 Edgewater Parkway, Silver Spring, Maryland 20903 and brings this action in her individual capacity.

111.     Plaintiff Debbie Wiener purchased a pair of Skechers Shape-ups on or about August 19, 2010 from the Skechers website. Plaintiff began wearing these shoes during her daily activities in Silver Spring, Maryland. On or about May 12, 2012, Debbie Wiener was walking on a flat paved road outdoors. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider for medical testing which revealed a broken foot as a result of her fall. On or about August 23, 2013, Debbie Wiener was walking on a flat surface in her home. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider for medical testing which revealed a broken foot as a result of her fall.

112.     Plaintiff, Melia Wilson, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 466 S. Bentalou Street, Baltimore, Maryland 21223 and brings this action in her individual capacity.

113.     Plaintiff Melia Wilson purchased a pair of Skechers Shape-ups on or about February 3, 2012 from Foot Locker in Baltimore, Maryland. Plaintiff began wearing these shoes during her daily activities in Baltimore, Maryland. On or about June 10, 2013, Plaintiff Melia Wilson was walking on a flat surface outdoors. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Jason Singler for medical testing which

demonstrated a tear anterior cruciate ligament (ACL). Plaintiff was also diagnosed with tears of two ligaments of the left leg as result of her fall while wearing her Skechers Shape-ups.

114.    Plaintiff, John Kreger, is and was at all times alleged herein a citizen of the State of Maryland and currently resides at 11300 Ore St NE, Cumberland, Maryland 21502 and brings this action in his individual capacity.

115.    Plaintiff John Kreger purchased a pair of Skechers Shape-ups in or about October of 2011 at Kohl's Department Store in LaVale, Maryland. Plaintiff began wearing these shoes during his daily activities in Cumberland, Maryland. On or about September 1, 2013, Plaintiff John Kreger was walking on a flat surface inside the Thomas B. Finan Center. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to his medical provider for medical testing which demonstrated an aggravated sciatic nerve and bulging disc in his back as a result of his Skechers Shape-ups.

116.    Plaintiff, Sandra Amundson, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 15376 Chili Court, Rosemount, Minnesota 55068 and brings this action in her individual capacity.

117.    Plaintiff Sandra Amundson purchased a pair of Skechers Shape-ups on or about March 2010 from Famous Footwear in Rochester, Minnesota. Plaintiff began wearing these shoes during her daily activities in Rosemount, Minnesota. On or about May 2012, Sandra Amundson was walking on a flat sidewalk. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward causing her to fall resulting in excruciating pain. Plaintiff presented to Oldsten Medical Center where she was diagnosed with a joint injury in her toe and a blood clot in her hand. Sandra Amundson was also diagnosed with a cyst on her foot.

118.    Plaintiff, Maureen Barbrick, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 1224 15th Ave. N., Trailer #42, Moorhead, Minnesota 56561 and brings this action in her individual capacity.

119.    Plaintiff Maureen Barbrick requested and received a pair of Skechers Shape-ups on or about May 2009 from Cerny Shoes in Lakewood, Minnesota. Plaintiff began wearing these shoes during her daily activities in Moorhead Minnesota. Beginning on or about February 2012, Maureen Barbrick began feeling pain in her hip after consistently and frequently wearing her Skechers Shape-ups for approximately one year. In or about May 2013, when the pain did not subside, Plaintiff presented for medical testing which demonstrated worn down tendons in her right hip and bone damage.

120.    Plaintiff, Kathleen Fletcher, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 2108 Orleans St. W., Stillwater, Minnesota 55082 and brings this action in her individual capacity.

121.    Plaintiff Kathleen Fletcher requested and received a pair of Skechers Shape-ups in or about April 2012. Plaintiff began wearing these shoes during her daily activities in Stillwater, Minnesota. In or about August 2013, Kathleen Fletcher was walking indoors on a carpeted staircase. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall down the stairs resulting in excruciating pain. Plaintiff presented to Lake View Hospital where x-rays demonstrated a fracture the right leg.

122.    Plaintiff, Debi Grant, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 19739 University Ave. NE, Cedar, Minnesota 55011 and brings this action in her individual capacity.

123.     Plaintiff Debi Grant purchased a pair of Skechers Shape-ups on or about April 2010 from Famous Footwear Coon Rapids, Minnesota. Plaintiff began wearing these shoes during her daily activities in Cedar, Minnesota. On or about July 22, 2010, Plaintiff Debi Grant was walking on her driveway. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left leg to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medial provider where she was diagnosed with a torn meniscus of the left knee.  Debi Grant was also diagnosed with knee deterioration as a result of her Skechers Shape-ups.

124.     Plaintiff, Cathryn Housey, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 101 12th Ave. S., Apt. 408, Sartell, Minnesota 56377 and brings this action in her individual capacity.

125.     Plaintiff Cathryn Housey purchased a pair of Skechers Shape-ups in or about August 2009 from Famous Footwear in St. Cloud, Minnesota. Plaintiff began wearing these shoes during her daily activities in Lakewood, Minnesota. On or about August 28, 2010, Cathryn Housey was walking outside in her yard on the grass. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to St. Cloud Orthopedics where x-rays demonstrated a fracture to the right knee cap.

126.     Plaintiff, Venoris Bumpus, is presently a citizen of the State of Nevada and currently resides at 6100 Carmen Blvd., Apartment 2028, Las Vegas, NV  89108 and brings this action in her individual capacity. However, at the time of her Skechers related injury, Plaintiff was present in the State of Minnesota.

30

127.    Plaintiff Venoris Bumpus purchased a pair of Skechers Shape-ups on or about November 14, 2010 at Lady Foot Locker in Maplewood, Minnesota. Plaintiff began wearing these shoes during her daily activities in Minnesota. On or about November 21, 2010, Venoris Bumpus was walking on a flat, asphalt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff suffered a spinal fusion as a result of her fall.

128.    Plaintiff, Karen Kennedy-Evans, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 518 12 St. E., Wabasha, Minnesota 55981 and brings this action in her individual capacity.

129.    Plaintiff Karen Kennedy-Evans purchased a pair of Skechers Shape-ups on or about March 2012 from Famous Footwear in Red Wing, Minnesota. Plaintiff began wearing these shoes during her daily activities in Wahasha, Minnesota. Beginning on or about December 2012, Karen Kennedy-Evans began to experience pain in her right ankle after consistently and frequently wearing her Skechers Shape-ups. The pain continued and progressed. On or about January 28, 2013, Karen Kennedy-Evans came under the care of the Mayo Clinic of Red Wing, Minnesota where medical testing demonstrated stress fractures of the right ankle as a result of wearing her Skechers Shape-ups.

130.    Plaintiff, Priscilla Moore, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at PO Box 431284, Minneapolis, Minnesota 55443 and brings this action in her individual capacity.

131.    Plaintiff Priscilla Moore purchased a pair of Skechers Shape-ups on or about February 2009 from Lady's Foot Locker in Bloomington, Minnesota. Plaintiff began wearing these shoes during her daily activities in Brooklyn Park, Minnesota. On or about July 2010,

Priscilla Moore was walking outside on wooden stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to TRIA Orthopedics where a MRI demonstrated a torn anterior cruciate ligament (ACL) and a torn meniscus of the right leg.

132.    Plaintiff, Robin Pyrlik, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 228 North 2nd Avenue E., Apartment 1319, Duluth, MN 55805 and brings this action in her individual capacity. Plaintiff Robin Pyrlik purchased a pair of Skechers Shape-ups on or about February 2011 from Kohl's in Yardly, Pennsylvania. Plaintiff began wearing these shoes during her daily activities in Duluth, Minnesota. On or about October 21, 2012, Robin Pyrlik was walking outside on a sidewalk. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to St. Luke's Hospital where x-rays demonstrated a fracture of the right ankle.

133.    Plaintiff, Karen Strub, is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 9 Kistler Court, La Crescent, Minnesota 55947 and brings this action in her individual capacity.

134.    Plaintiff Karen Strub, purchased a pair of Skechers Shape-ups on or about September 9, 2010 from Rogans in La Crosse, Wisconsin. Plaintiff began wearing these shoes during her daily activities in La Crescent, Minnesota. From on or about September 2010 to on or about December 2010, Karen Strub wore her Skechers Shape-ups and she began to experience pain in her ankle. The pain continued to worsen. On or about May, 11, 2011, Plaintiff Karen Strub was diagnosed with a fractured talus bone.

135.    Plaintiff, Gwen Ryan, is presently a citizen of the State of Illinois and currently resides at 21501 Wolf Lake Way, Cresthill, Illinois  60403 and brings this action in her individual capacity. However, at the time of her Skechers related injury, Plaintiff was present in the State of Minnesota.

136.    Plaintiff Gwen Ryan, purchased a pair of Skechers Shape-ups on or about October 2011 from Carson's in Maperville, Illinois. Plaintiff began wearing these shoes during her daily activities. On or about March 25, 2012, Gwen Ryan was walking on a flat asphalt walking path in Minneapolis, Minnesota. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where x-rays demonstrated fractures of the right arm.

137.    Plaintiff, Vicki Ingber, is a citizen of the State of Oregon and currently resides at 16230 NE San Rafael Dr., Portland, Oregon 97230 and brings this action in her individual capacity. However, at the time of her Skechers related injury, Plaintiff was present in Washington D.C.

138.    Plaintiff Vicki Ingber purchased a pair of Skechers Shape-ups in or about May 2011 in Portland, Oregon. Plaintiff began wearing these shoes during her daily activities in Portland, Oregon. On June 7, 2011, Vicki Ingber was walking in her defective Sketcher Shape-ups walking outdoors on a flat concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Sibley Memorial Hospital in Washington D.C. where medical testing determined she had a fractured left wrist and right patella. Plaintiff was also diagnosed, through medical testing, with a serious knee injury.

139.    Plaintiff, Darlene Brown, is a citizen of the State of Texas and currently resides at 4914 Airport Blvd., Houston, Texas 77048 and brings this action in her individual capacity. However, at the time of her Skechers related injury, Plaintiff was present in Washington D.C.

140.    Plaintiff Darlene Brown purchased a pair of Skechers Shape-ups in or about April of 2010 from Iverson Outlet Mall in Temple Hills, Maryland. Plaintiff began wearing these shoes during her daily activities in Houston, Texas. On or about August of 2010, Darlene Brown was walking indoors up a set of flat stair in Washington D.C. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Maryland Memorial Hospital where medical tests demonstrated a severe knee injury.

141.    Plaintiff, Hazel Doherty, is a citizen of the State of Texas and currently resides at 505 6th Street SW, Apt. 118, Roanoke, Virginia 24016 and brings this action in her individual capacity. However, at the time of her Skechers related injury, Plaintiff was present in the State of Nevada.

142.    Plaintiff Hazel Doherty purchased a pair of Skechers Shape-ups on December 17, 2011 from Costco in Las Vegas, Nevada. Plaintiff began wearing these shoes during her daily activities in Las Vegas, Nevada. On January 7, 2014, Hazel Doherty was walking indoors on a flat, wooden surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to University Medical Center Quick Care where medical tests determined that she had suffered several fractures in her right leg.

143.    Plaintiffs Michele Simmons, Mary Schlenk, Carol Stockton, Janet Thompson, Pamela Williams, Wanda Wilson, Jessica Potter, Angele Franklin, Rickey DeVargas, MaryBeth

Brown, Norma Dean, Vicki Freeman, Carla Hall, Kelli Winegarner, Debbie Boardman, Roxanne McMurtrey, Karlie Geraghty, Deborah McGinnis, Susan Shuster, Frances Wiernusz, Lisa Bowersox, Jay Novell, Tracy Ukadike, Gregory Isaacs, Lacie Stewart, Dennis Krause, Gina Beu, Lori Chase, Hanna Harezlak, Mary Ann Miller, Brandon Scott, David Thompson, Deborah Volkert,Carol Waddell, Hillary Walls-Stewart, Berthetta Robinson, Lonna Romero, Charity Audet, Madelynn Barton, Lauren Colville, Cary Davis, Lisa Faulkner-Jones, Nancy Gunkel, Mimmy Polan, Labore Sessions, Jeryl Seward, Cheryl Smith, Michael Stevens, Debbie Wiener, Melia Wilson, John Kreger, Sandra Amundson, Maureen Barbrick, Kathleen Fletcher, Debi Grant, Cathryn Housey, Venoris Bumpus, Karen Kennedy-Evans, Priscilla Moore, Robin Pyrlik, Karen Strub, Gwen Ryan, Vicki Ingber, Darlene Brown, and Hazel Doherty shall herein be collectively referred to as "Plaintiffs."

144.    Plaintiffs did not file lawsuits or otherwise investigate or pursue a claim concerning Plaintiffs' individual use of Skechers Shape-ups or Tone-ups because Skechers' acts and omissions, as set forth in this Complaint, served to conceal the product defects from Plaintiffs. For these reasons, the statute of limitations as to Plaintiffs' claims were tolled until Plaintiffs became aware of the wrongful acts of Skechers when information concerning these wrongful acts became public starting with the FTC warning discussed above as well as subsequent publicity, including, *inter alia,* advertising by attorneys concerning potential legal claims related to Skechers Shape-ups and Tone-ups. These advertisements informed Plaintiffs for the first time that the instability and other traits of the Shape-ups or Tone-ups were not natural, or to be expected, and may have been the cause of Plaintiffs' individual injuries.

145.    Upon information and belief all of Plaintiffs' injuries, and the mechanism by which each Plaintiff fell and/or was injured, as set forth in the preceding paragraphs were

directly and proximately caused by each Plaintiff's respective use of Skechers Shape-ups.

146.    The medical treatment and injuries described above are not necessarily a full and complete description of each Plaintiff's injuries, as each Plaintiff may have or did incur further treatment and injuries not specifically set forth herein.

## FACTUAL BACKGROUND

147.    Skechers is a shoe company that manufactures toning shoes, including Skechers Shape-ups and Tone-ups. These shoes have a pronounced rocker bottom sole. Skechers markets and promotes its toning shoes as footwear that will provide countless health benefits including improved cardiac function and orthopedic benefits. It markets and promotes its toning shoes to be worn in place of other athletic shoes during daily activities, exercise routines, and in the workplace. Skechers Shape-ups' slogans include the following: "Shape Up While You Walk" and "Shape Up While You Work."

148.    Skechers intentionally designs its toning shoes to create instability and to change gait mechanics. It is well established in the medical literature, however, that changing one's gait can and does cause chronic injuries. Such injuries include stress fractures, joint injuries, and tendon and ligament injuries. Moreover, shoes that create instability can and do cause people wearing them to fall. Despite this existing body of literature and numerous complaints to the company about chronic and traumatic injuries, Skechers has and continues to market and promote this footwear without performing any safety testing.

149.    Defendants marketed the "Shape-Ups" through an extensive advertising campaign consisting of television and print advertisements. The plaintiffs in these actions saw the advertisements and believed the representations to be true and therefore either purchased the shoes or received them as gifts. The "Shape-Ups" shoes were designed in one place. (*See* Ex. 1, Defendant Skechers U.S.A., Inc.'s Initial Disclosures Pursuant to Rule 26(a)(1)(A) in

*Grabowski, et al. v. Skechers U.S.A. Inc.).*  All matters of proof lie in a single place. A large number of the officers and employees of defendants or other individuals involved in the design of the shoes are in one place. *Id.* All documents relating to the design and development of the shoes are located in one place. *Id.* All documents regarding scientific studies in regard to the purported benefits of the technology utilized for the shoes are located in one place. *Id.* All documents regarding the manufacture and testing of the shoes are in one place. *Id.*  All the advertising for the shoes emanated from one place. *Id.* All the individuals involved in creating and approving the advertising campaign are in one place. *Id.*  All documents relating to the market research of the shoes are located in one place. *Id.* Additionally, all documents regarding the pricing structure and business plans for the defendants are located in one place. *Id.*  The advertisements and marketing materials relied on by the plaintiffs in deciding to purchase and wear the Skechers shoes originated, were approved, and were disseminated from the defendants' headquarters, and therefore the defendants are liable under the CLRA and UCL for directing these false and misleading materials from their headquarters to other state residents."

150.    Skechers made numerous misrepresentations, and continues to make such representations, regarding the efficacy and health benefits of Shape-ups.  For example, on Shape-ups packaging, the company advertises that the shoes were "Designed to help: burn more calories, tone muscles, and improve posture."  The packaging also contains statements that Shape-ups allow the consumer to "Get in Shape Without Setting Foot in a Gym."  Additionally, the cover of a pamphlet that accompanied the Shape-ups promised that the uses of the shoes: improves posture, strengthens the back, firms buttocks muscles, tones and firms thigh muscles, firms calf muscles, improves blood circulation, tightens abdominal muscles, and reduces knee joint stress.

151.    Skechers also used various celebrities to push its Shape-ups, including Kim Kardashian, Karl Malone, Joe Montana, and Brooke Burke.  One such instance of marketing was a television advertisement featuring Karl Malone, a professional basketball player who retired from the National Basketball Association in 2005 after nineteen seasons in the league.  In the advertisement, a reporter asks Karl Malone if he is coming back to the NBA.  Karl answers, "Why not?  I feel stronger than ever."  The reporter then asks "has training been hard?"  Karl answers "Hard? For me?  No.  Not with my Shape-ups.  They help strengthen my back, my core and my legs.  Man I feel great."

152.    In fact, toning shoes provide no additional health benefits than do regular athletic and walking shoes. The American Council on Exercise (ACE) commissioned an independent study by the University of Wisconsin to determine if toning shoes provide the benefits that they market and promote to the public. Based on those study results, the ACE concluded that: "Across the board, none of the toning shoes showed statistically significant increases in either exercise response or muscle activation during any of the treadmill trials," ACE says. "There is simply no evidence to support the claims that these shoes will help wearers exercise more intensely, burn more calories or improve muscle strength and tone."

153.    The health risks of Skechers outweigh the absence of any benefit provided to the wearer.  Indeed, as of May 2011, Consumer Reports has documented that Skechers has seen more reports of injuries or complaints than any other product in its database. This is not surprising, because by altering gait mechanics and creating instability, Skechers places consumers at increased risk for chronic injuries such as stress fractures and tendon ruptures, as well as acute injuries from falling.

154.    In addition to misrepresenting the efficacy and health benefits of Skechers Shape-

ups, Skechers also made numerous misrepresentations about the safety of Shape-ups, which served to lull consumers into believing that these shoes were safe despite their unbalanced appearance.  For example, an instructional manual that accompanied Skechers Shape-ups, instructs the user of the shoes to "keep your center of balance with a straight back, shoulders open and knees strong, but not locked.  If you feel your feet rolling in to the point where your knees are ready to knock, shift your weight to the outside edges of your Shape-ups to maintain your balance."  Additionally, "The Shape-ups Guide to Healthy Eating", a pamphlet that also accompanied the shoes, states that "Shape-ups have an unstable center of balance compared to normal sports shoes. *The body will instinctively try to find the center of balance by wearing these unstable Shape-ups*." (Emphasis added).

155.    These statements and others made by Skechers to consumers, including Plaintiffs, warranted that instability felt while wearing the shoes was a normal effect of the Shape-ups design.  These statements affirmatively negated any doubt that consumers, including Plaintiffs, may have had regarding the safety of the Skechers Shape-ups shoes.  According to Skechers' own statements in its product literature, if any injury was thought to be caused by the shoes' unstable design, it must have actually been caused by misuse of the shoes by the consumer.

156.    In addition to the statements regarding the unstable design of Shape-ups, Skechers stated in an instructional DVD that accompanied the shoes offered the consumer the following promise that he or she would know the shoes were working:  "You may experience some soreness at first, especially in your legs and buttocks.  That's a sign that these muscles are getting exercised and the soreness should subside over time."

157.    The statements regarding the "unstable design" of Shape-ups and the pain that wearing the shoes would normally cause prevented Plaintiffs, or any reasonable person similarly

situated, from reasonably discovering that they had a valid cause of action against Skechers for injuries caused by the Shape-ups shoes.  These statements clearly state that if there any injury caused by the shoes, it is not caused to the design of the shoe, but rather by misuse of the shoes by the consumer.

158.   In an instructional DVD that accompanied Shape-up shoes, Skechers states that Shape-ups were "the newest in exercise technology."  The instructional DVD goes on to say that "Shape-ups will probably feel a little awkward at first."  Next, the DVD provides an in-depth lesson on how to walk in the Skechers Shape-ups:

> Take a moment to find your center of balance.  Your feet should be parallel and hip distance apart.  Step forward with the middle section of your heal hitting the ground first.  Roll forward on to the ball of your foot and push off with your toes.  Be aware of the position of your feet and ankles.  Your ankles should not bend inward or outward but stay parallel.  Your knees should be strong, but not locked.  If you feel them locking, shift your weight to the outside edges of your Shape-Ups to maintain balance.   The position of your back and neck should be straight.  Don't look down.  Look straight ahead.  While the natural pace is best for everyday walking, we suggest you switch up your gait.

159.   Skechers indicated to consumers, including Plaintiffs, that these shoes were a revolutionary exercise technology, not just a simple sneaker.   Until learning that the representations concerning the Shape-ups were false, Plaintiffs had no reasonable basis to believe that their injuries were caused by the design of Shape-ups, because Skechers had specifically warranted to them that such a belief was groundless.

160.   A reasonable investigation by consumers injured by Shape-ups, including Plaintiffs, would not have revealed that Shape-ups were defectively designed or that the shoes' design was the cause of the subject injuries.  A review of the literature that accompanied the shoes would not have revealed that the shoes were defectively designed, for the reasons stated in

this complaint.  Additionally, numerous consumers throughout the country inquired of Skechers about whether the design of the shoes was defective, after they felt pain or instability while wearing the shoes.  Skechers answered these inquiries by repeating its marketing message: the shoes are designed to cause significant pressure on the human body and instability; this pressure and instability will produce the advertised health benefits; the consumer will become accustomed to the pressure and instability. Many consumers also made similar inquiries at various retail outlets at which they had purchased Shape-ups and received similar responses.

161.    On May 16, 2012, a judgment in favor of the Federal Trade Commission ("FTC") was entered under which Skechers was ordered to pay $40 million to settle charges that Skechers had deceived consumers with regard to their Skechers Shape-ups and other toning shoes. The misrepresentation and deception by Skechers included claims that wearing Skechers footwear could improve muscle tone and strength, increase overall circulation or aerobic conditioning, result in increased weight loss or loss of body fat, and/or result in improvement or reduction of body composition.[1]

162.    Also under the May 16, 2012, judgment, a permanent injunction was entered that prohibits Skechers from making claims that any of its footwear products can:

      a.   Improve or increase muscle tone and muscle strength;

      b.   Improve or increase overall circulation or aerobic conditioning;

      c.   Result in increased weight loss or loss of body fat; and/or

      d.   Result in improvement or reduction of body composition.

163.    Plaintiffs relied upon the above Skechers' claims including but not limited to claims Shape-Ups would increase muscle tone and decrease body fat. But for Skechers false and

---

[1] Fed. Trade Comm'n v. Skechers U.S.A., Inc., *et al.*, Case No. 12cv01214 (N.D. Ohio filed May 16, 2012).

misleading claims, Plaintiffs would not have purchased Skechers Shape-ups.

164.    All of Skechers' marketing efforts claim that the Shape-ups are safe and improve overall health. Implied in the Defendants' false claims are representations that the shoes are also safe when in fact they greatly increase the risk of falls and chronic injuries resulting in harm due to their instability.

165.    The FTC found that the "independent" study done by chiropractor Dr. Steven Gautreau did not produce the results claimed in the ads for Shape-ups. Further, it was discovered that Skechers had not only paid Dr. Gautreau to conduct the study but he was also married to a Skechers marketing executive.

166.    Until the May 16, 2012, FTC judgment, no Plaintiff knew or should have known the degree to which Shape-ups were defective. Until that date, Skechers continued to represent that the shoes were not only safe but effective at improving overall health. Plaintiff s could not have discovered through reasonable investigation that these representations were false until the FTC judgment was made public.

167.    Skechers continuously misled consumers as to the effectiveness of Shape-ups and as to the probability of falls while wearing Shape-ups.

168.    A visit to Skechers' website does not suggest that the Shape-ups are defective. Skechers continues to sell and promote Skechers Shape-ups as well as answer customer questions in several discussion forums. Nowhere does Skechers warn consumers of the increased risk of falling or that the shoes are defective.

169.    Due to their injuries, Plaintiffs have incurred significant medical expenses, could incur future medical expenses, and have suffered physical pain and mental anguish. Further, Plaintiffs have lost wages as a result of being unable to work and their individual ability to earn

money has been impaired. Additionally, they are at increased risk for future health problems and disability.

170.    Unbeknownst to Plaintiffs, the purchased shoes provided no additional benefit to their health. Instead, Plaintiffs were lulled into purchasing a dangerous product that the Defendant knew produced a substantial risk of causing chronic injuries and inducing falls because of Skechers' elevated and unstable rocker-bottom sole. This elevation alters gait mechanics and creates instability. Had Plaintiffs known that the toning shoe provided no benefit to their health, they would not have purchased or worn the shoes and would not have incurred the injuries or damages they did as a result of their use of the shoes.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY DEFECTIVE MANUFACTURING**

171.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

172.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of toning shoes including the Skechers Shape-ups.

173.    The Skechers Shape-ups manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from product specifications posing a serious risk of injury.

174.    As a direct and proximate result of Plaintiffs' use of Skechers Shape-ups as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs suffered harm, damages and economic loss and will continue to suffer such harm.

175.    As a direct and proximate result of the foregoing, Plaintiffs are entitled to

damages pursuant to the common law and applicable state statutes. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY DESIGN DEFECT

176.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

177.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of orthopedic devices including Skechers Shape-ups.

178.    The Skechers Shape-ups manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

179.    The Skechers Shape-ups that the Plaintiffs used had not been materially altered or modified prior to their use.

180.    The foreseeable risks associated with the design or formulation of Skechers Shape-ups, include, but are not limited to, the fact that the design or formulation of Skechers Shape-ups is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

181.    As a direct and proximate result of Plaintiffs' use of Skechers Shape-ups as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by

Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

182.    As a direct and proximate result of the foregoing, Plaintiffs are entitled to damages pursuant to the common law and applicable state statutes. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILTY DEFECT DUE TO INADEQUATE WARNING

183.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

184.    The Skechers Shape-ups manufactured and supplied by Defendants were defective due to inadequate warning or instruction because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers and they failed to adequately warn consumers and/or their health care providers of such risks as follows:

a.     The Defendants knew or, in the exercise of reasonable care, should have known that footwear that is marketed to be worn on a daily basis during physical activity and is designed to alter gait mechanics and create instability presents a risk of chronic or acute injuries; including stress fractures, tendon and ligament damage, and falls;

b.     The Defendants failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning

the risk chronic and acute injuries from gait alteration and instability caused by the shoes, in light of the likelihood that the shoes would cause the harm claimed by the Plaintiffs, and in light of the likely seriousness of that harm.

185.    The Defendants, as manufacturers of Skechers Shape-ups, are held to the level of knowledge of an expert in the field of that type of shoes, and had a duty to warn its consumers of the dangers associated with the shoes and failed to do so.

186.    The Skechers Shape-ups manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of Skechers Shape-ups, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury as set forth herein.

187.    As a direct and proximate result of Plaintiffs' use of Skechers Shape-ups as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiffs suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

188.    As a direct and proximate result of the foregoing, Plaintiffs are entitled to damages pursuant to the common law and applicable state. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**STRICT PRODUCTS LIABILTY DUE TO NON CONFORMANCE WITH REPRESENTATIONS**

189.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

190.   Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of toning shoes including the Skechers Shape-ups and made representations regarding the character or quality of Skechers Shape-ups including but not limited to:

a.   Get in shape without setting foot in a gym;

b.   Designed to promote weight loss, tone muscles, and improve posture;

c.   Tightens abdominal muscles;

d.   Improves blood circulation;

e.   Improves posture;

f.   Strengthens the back;

g.   Firms buttocks muscles;

h.   Tones and firms thigh muscles;

i.   Firms calf muscles;

j.   Increase cardiovascular health;

k.   Reduce stress on knee and ankle joints;

l.   Relieve muscle tension and fatigue;

m.   Forces you to engage muscles not normally used when walking on hard

ground;

n.     Reduce impact on your joints and lower back;

o.     Improve your life by changing the way you walk;

p.     Improve stamina and metabolism.

191.   The Skechers Shape-ups manufactured and supplied by Defendants were defective in that, when they left the hands of Defendants, they did not conform to representations made by Defendants concerning the product.

192.   These material misrepresentations made by the Defendants were false as proved by a study from the University of Wisconsin that was commissioned by the American Council on Exercise.

193.   Plaintiffs justifiably relied upon Defendants' representations regarding Skechers Shape-ups that they would provide the claimed health benefits if used in the manner directed by the labeling when Plaintiffs selected Skechers Shape-ups and wore the shoes regularly during daily activities, including walking and exercising.

194.   As a direct and proximate result of Plaintiffs' use of the Skechers Shape-ups and their reliance on Defendants' representations regarding the character and quality Skechers Shape-ups, Plaintiffs suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE

195.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as

if fully set forth herein and further allege as follows:

196.    Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of Skechers Shape-ups, including a duty to insure that Skechers Shape-ups did not pose a significantly increased risk of injury.

197.    Defendants failed to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of Skechers Shape-ups. Defendants knew or should have known that footwear that is marketed to be worn on a daily basis during physical activity and is designed to alter gait mechanics and create instability presents a risk of chronic or acute injuries; including stress fractures, tendon and ligament damage, and falls therefore giving rise to pain and suffering, debilitation, and the need for medical treatment including possible surgery and further complications, and therefore was not safe for use by Plaintiffs.

198.    Despite the fact that Defendants knew or should have known that Skechers Shape-ups could fail early in patients therefore giving rise to pain and suffering, debilitation, and therefore giving rise to pain and suffering, debilitation, and the need for medical treatment including possible surgery and further complications, Defendants continued to market Skechers Shape-ups as a safe and effective toning shoe.

199.    As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered significant damages, including but not limited to physical injury, pain and suffering and further treatment and will continue to suffer such damages in the future.

200.    In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive

damages.

WHEREFORE, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

201.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

202.   Defendants expressly warranted that Skechers Shape-ups were a safe and effective toning shoe.

203.   Plaintiffs purchased and used Skechers Shape-ups for their intended purpose.

204.   Plaintiffs relied on Defendant's express warranties.

205.   The Skechers Shape-ups manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to Plaintiffs when used as recommended and directed.

206.   As a direct and proximate result of Defendants' breach of warranty, Plaintiffs have suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

207.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as

if fully set forth herein and further allege as follows:

208.   At the time Defendants designed, manufactured, marketed, sold, and distributed Skechers Shape-ups for use by Plaintiffs, Defendants knew of the use for Skechers Shape-ups were intended and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling and marketing were sufficient.

209.   Plaintiffs reasonably relied upon the skill and judgment of Defendants as to whether Skechers Shape-ups were of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

210.   Contrary to such implied warranty, Skechers Shape-ups were not of merchantable quality or safe for their intended use, because the product was unreasonably dangerous and defective as described above.

211.   As a direct and proximate result of Defendants' breach of warranty, Plaintiffs have suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

### EIGHTH CAUSE OF ACTION
### NEGLIGENT REPRESENTATION AND FRAUD

212.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

213.   In regard to the Shape-ups footwear purchased and worn by the Plaintiffs, the Defendants made multiple material representations about the shoes that included:

      a.      Get in shape without setting foot in a gym;

b.     Designed to promote weight loss, tone muscles, and improve posture;

c.     Tightens abdominal muscles;

d.     Improves blood circulation;

e.     Improves posture;

f.     Strengthens the back;

g.     Firms buttocks muscles;

h.     Tones and firms thigh muscles;

i.     Firms calf muscles;

j.     Increase cardiovascular health;

k.     Reduce stress on knee and ankle joints;

l.     Relieve muscle tension and fatigue;

m.     Forces you to engage muscles not normally used when walking on hard ground;

n.     Reduce impact on your joints and lower back;

o.     Improve your life by changing the way you walk;

p.     Improve stamina and metabolism.

214.    These material representations made by the Defendants were false as proven by a study from the University of Wisconsin that was commissioned by the American Council on Exercise.

215.    When the Defendants made these material representations, it knew that they were false, and it made the material representations recklessly without any knowledge of their truth and a positive assertion.  Specifically, many of the representations are not supported by the four "studies" that the Defendants cites as support for the claims, and for those representations that the Defendants bases on the "studies", those results were misrepresented in order to be construed as supporting these representations.

216. Defendants had actual knowledge based upon studies, published reports and clinical experience that its product, Skechers Shape-ups created an unreasonable risk of serious bodily injury yet Defendants negligently misrepresented to Plaintiffs that its toning shoes were safe and met all applicable design and manufacturing requirements.

217. The Defendants made these false, material representations with the intention of inducing buyers, including the Plaintiffs, to act by purchasing the Shape-ups footwear by appealing to the buyers' desire to own athletic footwear that would result in numerous health benefits.

218. Plaintiffs acted in justifiable reliance on these material representations made by the Defendants in that they purchased these shoes specifically under the belief that the shoes would provide the claimed health benefits if used in the manner directed by the labeling.

219. As a direct and proximate result of Defendants' fraudulent and/or negligent actions and omissions, Plaintiffs used Skechers Shape-ups and suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

220. Defendants' actions and omissions as identified in this Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

### NINTH CAUSE OF ACTION
### UNJUST ENRICHMENT

221. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

222. As the intended and expected result of their conscious wrongdoing, Defendants

have profited and benefited from the purchase and use of Skechers Shape-ups by Plaintiffs.

223.   Defendants have voluntarily accepted and retained those profits and benefits, derived from Plaintiffs, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by Defendants, or that Plaintiffs, as reasonable consumers, expected to receive.

224.   By virtue of the conscious wrongdoing alleged above, Defendants have been unjustly enriched at the expense of Plaintiffs, who are entitled in equity, and hereby seek, the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## TENTH CAUSE OF ACTION
## VIOLATION OF UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS

225.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

226.   Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of Skechers Shape-ups.

227.   Had the Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for Skechers Shape-ups and would not have incurred related medical costs.

228.   Specifically, Plaintiffs were misled by the deceptive conduct described herein.

54

229.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to consumers, including Plaintiffs, constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed below.

230.    Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for Skechers Shape-ups that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

231.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices.

232.    Plaintiffs were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at consumers was to create a demand for and sell Skechers Shape-ups. Each aspect of Defendants' conduct combined to artificially create sales of Skechers Shape-ups.

233.    Consumers relied upon Defendants' misrepresentations and omissions in determining which shoes to purchase.

234.    By reason of the unlawful acts engaged in by Defendants, Plaintiffs have suffered ascertainable loss and damages.

235.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs were damaged by paying in whole or in part for Skechers Shape-ups.

236.    As a direct and proximate result of Defendants' violations of consumer protection statutes Plaintiffs have sustained economic losses and other damages for which they are entitled to statutory and compensatory damages, and declaratory relief, in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
## PUNITIVE DAMAGES

237.   Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs, as though fully set forth herein.

238.   At all times material hereto, the Defendants knew or should have known that Skechers Shape-ups were inherently more dangerous and prone to failure than toning shoes.

239.   At all times material hereto, the Defendants attempted to misrepresent and did misrepresent facts concerning the safety and efficacy of Skechers Shape-ups.

240.   Defendants' misrepresentation included intentionally withholding material information from the medical community and the public, including Plaintiff, regarding the safety of Skechers Shape-ups.

241.   Notwithstanding the foregoing, Defendants continued to aggressively market Skechers Shape-ups to consumers, including Plaintiff, without disclosing the aforesaid problems and injuries.

242.   The Defendants knew of Skechers Shape-ups' defective and unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture, market, distribute and sell it so as to maximize sales and profits at the health and safety of the public, including Plaintiff, in conscious and/or reckless disregard of the foreseeable harm caused by the device.

243.   Defendants fraudulently, intentionally, and/or recklessly concealed and failed to disclose to the public, including Plaintiff, the dangers of Skechers Shape-ups in order to ensure

continued and increased sales.

244.    Defendants' intentional and/or reckless failure to disclose information deprived Plaintiff of the necessary information to enable Plaintiff to weigh the true risk of using Skechers Shape-ups against the benefits.

245.    The aforesaid conduct of Defendants in the design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of Skechers Shape-ups was fraudulent, knowing misconduct, willful and/or conduct undertaken to recklessly and with conscious disregard for the safety of Plaintiff such as to constitute despicable conduct, and oppression, fraud and malice, and at all times relevant, such conduct was ratified by the corporate Defendants herein, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example to Defendants, and to deter them from similar conduct in the future.

246.    Plaintiff seeks actual and punitive damages from the Defendants as alleged herein pursuant to all appropriate state statutes and common law.  The injuries and damages alleged herein are permanent and will continue into the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## PRESERVATION CLAIMS

247.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

248.    Many States have recently enacted tort reform statutes with "exclusive remedy" provisions. Courts have yet to determine whether these exclusive remedy provisions eliminate or

supersede, to any extent, state common law claims. If during the pendency of this action this court makes any such determination, Plaintiffs hereby specifically make claim to and preserve any State claim based upon any exclusive remedy provision, under any state law this court may apply, to the extent not already alleged above.

249.    To the extent that Defendant(s) may claim that one or more of Plaintiffs' claims are barred by the applicable statute of limitations, Plaintiff asserts that the statute of limitations is and has been tolled by Plaintiffs' discovery that their injury(ies) was/were caused by Defendants' defective product and failure to properly and adequately warn of the products' risks, all as more fully set forth in this Complaint, after the injury sustained by Plaintiffs.

250.    The parties agreed to toll the statute of limitations pursuant to a written tolling agreement executed between the parties on March 14, 2014. The Tolling Agreement was effective from the date of execution until its expiration on October 14, 2014. Under the Tolling Agreement, tolling continues for ninety (90) days after expiration to allow for filing of Complaints. Plaintiffs' claims are protected from a statute of limitations defense consistent with this Tolling Agreement. Plaintiffs have not attached a copy of the Tolling Agreement but are able and willing to do so upon request of the Court or any party in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.  Trial by Jury;

B.  Judgment in favor of Plaintiffs and against all Defendants, for all damages in such amounts as may be proven at trial;

C.  Compensation for non-economic losses, including, but not limited to medical expenses, disfigurement, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

D.  Punitive and/or exemplary damages in such amounts as may be proven at trial;

E.  Restitution and disgorgement of all revenue that Defendants have obtained through the manufacture, marketing, and sale of Skechers Shape-ups;

F.  Attorney's fees and costs;

G.  Pre and post-judgment interest; and

H.  Any and all further relief, both legal and equitable, that the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: January 6, 2014

RESPECTFULLY SUBMITTED:

/s/ John J. Driscoll
John J. Driscoll (54729)
**The Driscoll Firm, P.C.**
One Metropolitan Square
211 North Broadway, 40th Floor
St. Louis, MO 63102
314-932-3232 – Telephone
314-932-3233 – Facsimile
john@thedriscollfirm.com

**STATE OF MISSOURI**        )
                                   )ss
**CITY OF ST. LOUIS**          )

        I, THOMAS KLOEPPINGER, Clerk of the Circuit Court within and for the City of St. Louis, State of Missouri, do hereby certify that the foregoing are true copies of original documents on files and recorded in my office for the following case
**ENTIRE FILE**

---

St. Louis City case number **1522-CC00053**

        WITNESS my hand and SEAL of said Court this 13TH day of FEBRUARY, 2015.

*Thomas Kloeppinger*
**Thomas Kloeppinger**
**Circuit Clerk**

By: *Michelle Eagen*
**Deputy Clerk**



SEAL of the CIRCUIT COURT